UNITED STATES of America,
Plaintiff-Appellee,

v.

Lewis WARD, Defendant-Appellant.

No. 15211.

United States Court of Appeals
Seventh Circuit.

May 9, 1966.

Oscar Strom, Gary, Ind., for appellant.

Alfred W. Moellering, U. S. Atty., Joseph F. Eichhorn, Asst. U. S. Atty., Fort Wayne, Ind., for appellee.

Before HASTINGS, Chief Judge, and DUFFY and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Lewis Ward, defendant, has appealed from a judgment of the district court, convicting him on the verdict of a jury, of both counts of a two-count indictment. He was sentenced to twelve years on each count to be served concurrently.

Count I charged that defendant, being a transferee of marijuana required to pay the tax imposed by 26 U.S.C.A. § 4741(a), did acquire and obtain approximately 418.720 grams of marijuana without having paid said tax, in violation

of 26 U.S.C.A. § 4744(a) (1). Count II charged that defendant transferred said marijuana without the required "written order", in violation of 26 U.S.C.A. § 4742(a). Defendant's motions for directed verdict and new trial were overruled.

■ 1. Defendant contends that there was no proof of his guilt beyond a reasonable doubt, because he was not positively identified, he was not present when the crime was committed, and there was no joint enterprise established between Lionel Otis,[1] also known as John Alton, and himself. There was evidence tending to prove the facts now stated.

On November 20, 1963, at 8:45 P.M., Gary policeman Hilton, Chicago detective Jamison, federal narcotics agents Raebel and Bautista, with Gary police officers Kutch and Swisher, and government informer Jack Shepard, also known as Sam G. Shepard and Cadillac Jack, arrived in automobiles at 1207 Adams Street, Gary, Indiana. Jamison and the informer drove in the latter's Cadillac car, Bautista and Hilton followed in a squad car, and Swisher, Kutch and Raebel ("the Raebel group") went in another squad car.

For the government, Jamison testified:

"Q All right sir, you say you walked into 1207 Adams Street?

A Yes, I did. I asked the man to my left who was Indian Joe, and he pointed to the defendant. I then walked to the defendant and introduced myself as Jimmy. I told him that Big Ernie from Alton, Illinois, had sent me.

He asked me how was Ernie, and I said he was fine. I told him that Ernie had sent me to purchase two ounces of cocain.

He asked me if I knew several people, he mentioned several names, and one of the names was Jack Shephard. I said yes, I knew Jack Shephard. He told me he did not have any cocain at that time, but he would sell me some marijuana for $125 a pound.

Q Yes?

A He told me to go to 1416 Adams Street and wait there, and he would deliver to me there."

Jamison also said that after ten minutes he went in the Cadillac with the informer to the latter's house at 1416 Adams Street.

The Raebel group followed the Cadillac and parked a half block away. In 15 or 20 minutes Raebel saw a white Lincoln drive up and park ahead of the Cadillac.

Hilton and Bautista remained near 1207 Adams Street after the Cadillac and the Raebel group had departed for 1416, and about 10 to 15 minutes later they observed and followed Otis and defendant as they left 1207 in a 1961 light-colored Lincoln convertible, which proceeded to 1416.

Raebel testified that he saw through binoculars, defendant behind the wheel of the Lincoln, and a negro with a bulge under his jacket get out of the Lincoln and go into 1416. Hilton testified that he saw "one party get out of the passenger's side", whom he believed to be Otis, and enter 1416.

Jamison, who was inside the premises at 1416, testified that Otis, being admitted, said that he was delivering a package for defendant. After examining the package, Jamison paid Otis $125 of previously recorded money. Then Raebel saw Otis come out. Hilton said he saw Otis get into the Lincoln and drive off.

We hold that the foregoing acts and declarations establish a common design and common concert of action between defendant and Otis sufficient to sustain the former's conviction under 26 U.S.C.A. §§ 4744(a) (1) and 4742(a). United States v. Pronger, 7 Cir., 287 F.2d 498, 500 (1961).

■ 2. Defendant contends that the district court erred when making two statements to prospective jurors during the voir dire examination. First, he said:

"Then there is a third kind of evidence, which is called applicable pre-

---

1. Otis was charged with a violation of 26 U.S.C.A. § 4744(a) prior to the trial of defendant and was sentenced upon his plea of guilty.

sumptions, in other words, from certain facts that may exist certain presumptions arise. We start out, of course, in this case with a presumption of innocence on the part of the defendant. If certain evidence is introduced, this presumption of innocence may change to a presumption of guilt. These presumptions will be explained to you if they arise in the instructions, but this is a part of the evidence in this case."

We find no error in this statement, however, because one of the statutes mentioned in the indictment, 26 U.S.C.A. § 4744 (a) establishes a presumption of guilt:

> * * * Proof that any person shall have had in his possession any marihuana and shall have failed * * * to produce the order form required by section 4742 to be retained by him shall be presumptive evidence of guilt under this subsection * * *.

Secondly, the court stated:

> "Now, there is another matter which I probably should explain to you that is known as inferences. In other words, from the testimony that is introduced in the case, you may draw certain inferences. It is up to you to determine whether or not these are reasonable inferences. If so, you may accept them as such. If you feel they are not reasonable inferences, you may reject them. These inferences generally arise out of circumstances that may be presented in connection with the case, or the evidence, rather than any direct evidence."

We find no error in respect to the second statement, supra.

It is significant that defendant's trial counsel made no objection to either of said statements.

Moreover, the court's final trial instructions again and in more detail correctly informed the jury:

> "In addition to the foregoing, you are entitled to consider the circumstances of the case and surrounding the case. Such circumstances may aid you in determining the ultimate issue, which is of course the guilt or innocence of the defendant. Conviction may be based wholly or partially upon circumstantial evidence; but in order to convict the defendant of the charges against him upon circumstantial evidence, it is incumbent upon the Government to prove each necessary circumstance beyond a reasonable doubt, and the consequences must flow naturally and logically from the circumstances so proved. Circumstances which may be reconciled with the theory of innocence as well as with the theory of guilt, should be reconciled with the theory of innocence.

> * * * * * *

> "The guilt of the accused is not to be inferred because the facts proved are consistent with his guilt, but, on the contrary, before there can be a verdict of guilty you must believe from all the evidence and beyond a reasonable doubt that the facts proved are inconsistent with his innocence. If two conclusions can reasonably be drawn from the evidence, one of innocence and one of guilt, you should adopt the former."

■ **3.** Defendant contends that portions of the testimony of two government witnesses, officer Hilton and Carroll Gibson, federal agent for the Federal Bureau of Narcotics, were prejudicial to him, and that this testimony constituted an attack on his presumed good moral character, which issue had not been raised in the trial.

It may well be that defendant was prejudiced by the testimony of which he now complains. However, it was elicited by his counsel's exessive cross-examination of Hilton and Gibson. Hilton, when persistently pressed by defense counsel to state upon what he based his familiarity with defendant Ward, answered that he had familiarized himself "on previously convicted narcotics persons" and was "very familiar with Mr. Ward"; that on the occasion in question he saw and recognized Ward's face.

No motion was made by defense counsel to strike this testimony of Hilton. It stands in the record and we cannot hold with defendant's contention that error occurred in the admission of evidence elicited by defense counsel on cross-examination of Hilton.

Agent Gibson on redirect examination by Mr. Violanti, assistant United States attorney, testified, in part:

"Q Tell us how you arrived at your judgment that Otis was talking about the defendant?

A Because he said it was Indian Joe, and I know Indian Joe from other investigations which I have been conducting myself in Gary.

\* \* \* \* \* \*

A As I was saying, during my investigations in Gary, Indiana, well, Mr. Ward was one of the individuals whom I was trying myself to develop a case against, but I always knew that Otis was—"

We further hold that defense counsel opened the door to agent Gibson's statements on redirect, concerning Otis' connection with defendant, by asking Gibson on cross-examination, "How can you say that he [Otis] knows him [defendant] ?".

We hold that there was no error in the admission of the evidence of agent Gibson now under attack by defendant.

■ 4. Defendant asserts that he was entrapped by government's officers and agents, which raises two questions, i.e. procedurally, whether defendant now may assert this defense when he failed to do so in the district court; substantively, if the answer to the first question is affirmative, whether there is merit to said defense.

Defendant cites Sears v. United States, 5 Cir., 343 F.2d 139 (1965), for the proposition that where the government's own case in chief injected substantial evidence of entrapment into the case, the defendant is entitled to raise the defense by motion for acquittal. However, it should be noted that in *Sears* defendant therein urged the district court on motion for acquittal that the government's own evidence established entrapment as a matter of law. Sears v. United States, supra, at 143. Here, defendant's "motion for directed verdict of not guilty" did *not* raise the issue of entrapment. However, we shall consider the merits of the defense.

Defendant attaches great importance to the fact that he did not solicit Jamison, but that the latter first approached him about purchasing some narcotics. The Supreme Court, however, in Sorrells v. United States, 287 U.S. 435, 441, 53 S.Ct. 210, 212, 77 L.Ed. 413 (1932), has noted:

"It is well settled that the fact that officers or employees of the government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution. Artifice and stratagem may be employed to catch those engaged in criminal enterprises. \* \* \*"

In Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), the court did not mention as significant the mere inducement by Kalchinian, a government informer, of petitioner therein to sell narcotics, but rather emphasized that petitioner had "tried to avoid the issue", and that his "conduct and predisposition" were to avoid the illegal sale and use of narcotics. At 371, 78 S.Ct. at 820, the court said:

" \* \* \* Finally Kalchinian asked petitioner if he knew of a good source of narcotics. He asked petitioner to supply him with a source because he was not responding to treatment. From the first, petitioner tried to avoid the issue. Not until after a number of repetitions of the request, predicated on Kalchinian's presumed suffering, did petitioner finally acquiesce. \* \* \*"

In Masciale v. United States, 356 U.S. 386, 388, 78 S.Ct. 827, 2 L.Ed.2d 859 (1958), the controlling fact was that petitioner therein "was ready and willing to search out a source of narcotics and to bring about a sale."

Here there is nothing in the record to indicate that defendant "tried to avoid the issue" or that he was not "ready and willing" to participate in a sale of marijuana. Rather, the testimony of officer Jamison suggests that the opposite was true: defendant inquired of Jamison's references; stated that he did not have any cocaine but would sell marijuana; named a price; and instructed Jamison to go to a particular residence and wait there.

We hold that defendant did not try to avoid the issue, but was ready and willing to participate in a sale of marijuana. Thus, the defense of entrapment was not available to him.

We find no error in the action of the district court in overruling defendant's motion for a directed verdict at the close of all evidence and his motion for judgment notwithstanding the verdict. Likewise no error was committed in overruling defendant's motion for a new trial herein.

For all of these reasons, the judgment of the district court is affirmed.

Judgment affirmed.