**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Sheldon G. PERLMAN, Defendant-Appellant.**

**No. 17543.**

United States Court of Appeals, Seventh Circuit.

July 2, 1970.

Certiorari Denied Oct. 12, 1970.

See 91 S.Ct. 64.

Maurice J. Walsh, Carl M. Walsh, Chicago, Ill., for defendant-appellant.

Thomas A. Foran, U. S. Atty., John Peter Lulinski, Chicago, Ill., for plaintiff-appellee.

Before KILEY, CUMMINGS and KERNER, Circuit Judges.

CUMMINGS, Circuit Judge.

This case comes to us upon remand from the Supreme Court which vacated our earlier reversal judgment [1] in light of Buie v. United States, 396 U.S. 87, 90 S.Ct. 284, 24 L.Ed.2d 283.[2] On April 21, 1970, this Court entered judgment affirming defendant's conviction under 26 U.S.C. § 4742(a) on the authority of Santos v. United States, 426 F.2d 244 (7th Cir. 1970), and Ward v. United States, 426 F.2d 244 (7th Cir. 1970). Subsequently, defendant asked us to reconsider this ruling, and on June 10,

---

1. That judgment was contained in an unpublished order dated September 23, 1969.

2. Defendant continues to insist that the action was barred by reason of the constitutional invalidity of 26 U.S.C. § 4742(a). However, we consider this contention foreclosed by the Supreme Court's action in vacating our initial decision to that effect on the authority of its Buie decision.

1970, oral argument was heard.[3] After careful consideration of the contentions presented by defendant in his motion for reconsideration, we decline to modify our order of April 21, 1970, and we now reaffirm defendant's conviction.

Defendant's conviction is based upon an indictment returned by the Grand Jury on May 24, 1966, charging Perlman and Harold J. Dalton with the illegal transfer of marijuana to agent Robert Bottorff of the Federal Narcotics Bureau on March 15, 1966, in Chicago, Illinois. This case received a bench trial. The evidence, taken in the light most favorable to the Government (Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680), reveals that agent Bottorff, working undercover in Chicago, contacted Dalton to arrange purchases of hashish, a form of marijuana, from Dalton's contact in Morocco. Dalton indicated that Bottorff would obtain the drugs by communicating with Dalton's confederate, Perlman, in Tangier, Morocco. Bottorff first cabled Perlman, using language supplied by Dalton. He then mailed a handwritten letter from Dalton to Perlman and enclosed $20. Subsequently, Bottorff received a telephone call from Perlman and various written communications from Tangier involving the illicit transaction. On March 15, 1966, Dalton telephoned Bottorff to inform him that Perlman had sent a magazine containing a quantity of hashish. The transfer was completed that same day in Dalton's apartment, and the material contained in the magazine proved to be the hashish involved in the indictment. In addition to the testimony by Bottorff concerning the statements of Dalton which implicated Perlman, the handwriting of the wrapping paper from the magazine, as well as the writing on the letters received by Bottorff, was Perlman's.

*Jurisdiction and Variance*

■ Defendant contends that the jurisdictional requisites for violation under Section 4742(a) [4] were lacking from the Government's case, and that a fatal variance existed in the prosecution's proof and the crime charged in the indictment. He rests both contentions upon the fact that, at all pertinent times, Perlman remained in Tangier, Morocco. The evidence revealed that the transfer from Dalton to Bottorff took place in Chicago and that defendant Perlman was not a direct participant there.

The Government's mode of prosecution, supported by a plethora of evidence, was that Perlman and Dalton were co-conspirators involved in a joint venture whose object was the illegal transfer of hashish to agent Bottorff in Chicago. The critical transaction, Dalton's sale to Bottorff, took place in the United States, as required under Section 4742(a). See United States v. Tramaglino, 197 F.2d 928, 930–931 (2d Cir. 1952), certiorari denied, 344 U.S. 864, 73 S.Ct. 105, 97 L.Ed. 670, e. g., United States v. Padilla, 374 F.2d 996 (2d Cir. 1967); Brulay v. United States, 383 F.2d 345, 349 (9th Cir. 1967), certiorari denied, 389 U.S. 986, 88 S.Ct. 469, 19 L.Ed.2d 478. Commission of the substantive offense by Dalton which accomplished the goal of the conspiracy rendered Perlman guilty of the same offense. United States v. Zizzo, 338 F.2d 577, 580 (7th Cir. 1964), certiorari denied, 381 U.S. 915, 85 S.Ct. 1530, 14 L.Ed.2d 435, rehearing denied, 384 U.S. 982, 86 S.Ct. 1856, 16 L.Ed.2d 693; United States v. Chambers, 382 F.2d 910, 914 (6th Cir. 1967); United States

---

3. Our May 15, 1970, order directed that this "appeal" be set down for oral argument, but this Court did not vacate its April 21, 1970, judgment of affirmance.

4. Section 4742(a) (26 U.S.C. § 4742(a)) states:
   "It shall be unlawful for any person, whether or not required to pay a special tax and register under section 4751 to 4753, inclusive, to transfer marihuana, except in pursuance of a written order of the person to whom such marihuana is transferred, on a form to be issued in blank for that purpose by the Secretary or his delegate."

v. Ward, 360 F.2d 909, 910 (7th Cir. 1966).

We therefore hold that jurisdiction was proper for the prosecution under Section 4742(a), and that no variance existed between the crime charged in the indictment and the proof presented at Perlman's trial. Cf. United States v. Schennault, 429 F.2d 852 (7th Cir. 1970).

### Parole and Deportation of Codefendant Dalton

Defendant also urges that the parole and deportation of codefendant Dalton after Perlman's arraignment deprived defendant of his Sixth Amendment rights of confrontation and compulsory process of witnesses. Dalton had previously been sentenced to five years' imprisonment on June 20, 1966, after pleading guilty to the May 1966 indictment. At that time and subsequently until July 1967, defendant Perlman remained in Morocco. He was arrested on this indictment when he returned to the United States in July, and his attorney entered an appearance on Perlman's behalf on August 29, 1967. At his arraignment on December 11, 1967, defendant was given leave to file motions on or before January 1, 1968. Perlman had from July 1967 until Dalton was deported to seek to interview him, but Perlman's first such efforts began with his counsel's January 9, 1968, correspondence with prison officials. On January 17, 1968, having failed to locate Dalton informally, defendant moved for the production of Dalton for an interview. Fifteen days beforehand, however, Dalton had been granted parole and immediately deported to Ireland. On January 22, 1968, the prosecutor notified Perlman of the deportation, and on May 3, 1968, the court granted Perlman's motion for the disclosure of evidence obtained from and concerning Dalton. Thereafter, on September 20, 1968, defendant Perlman unsuccessfully moved for the dismissal of the indictment because of the removal of Dalton and resulting "spoliation and suppression" of evidence.

At the outset, we reject any contention that the record discloses a deliberate attempt on the part of the Government to exclude from consideration relevant testimony of Dalton, whatever its content. Fraud upon the court may not be presumed but must be proved. United States v. Oropeza, 275 F.2d 558, 561 (7th Cir. 1960). The record here indicates that Dalton had been paroled and removed from the country prior to any inquiry by defendant Perlman and certainly prior to any request for his production by the prosecution. His parole and immediate deportation occurred in accordance with customary governmental practice to expel alien narcotics offenders. There is not the slightest hint that the prosecution in this case was aware of the action contemplated by the Immigration and Naturalization Service until well after Dalton had been sent abroad and disappeared from view.

Our rejection of any suggestion of prosecutorial misconduct in this case does not, however, imply that we approve of the Government's action. To do so would lend judicial sanction to an unnecessary lack of communication between coordinate administrative departments of the Federal Government. Dalton was no ordinary witness; he was the only codefendant and was the sole direct participant in the March 15 transaction with agent Bottorff. He obviously possessed evidence regarding Perlman's participation in the illegal scheme. The Government itself elicited incriminating statements made by Dalton to Bottorff at Perlman's trial. In light of Dalton's final conviction, Perlman was entitled to the testimony of his codefendant if helpful to his defense. United States v. Bronson, 145 F.2d 939, 943 (2d Cir. 1944); cf. United States v. Carella, 411 F.2d 729, 731 (2d Cir. 1969), certiorari denied, Erhart v. United States, 396 U.S. 860, 90 S.Ct. 131, 24 L.Ed.2d 112. Of course, the Government need not have perpetuated Dalton's incarceration merely to ensure his availability as a witness on the contingency that Perlman might desire that testimony. On the

other hand, the Government's affirmative act of deporting Dalton effectively suppressed his testimonial evidence on the material issues of the case.[5] Under these circumstances, we feel compelled to inquire into the consequences which the absence of this witness might reasonably have had upon defendant's right to a fair and accurate determination of his guilt. Cf. United States v. Walton, 411 F.2d 283, 288 (9th Cir. 1969).

■ Our review of the record discloses no basis for questioning either the soundness of defendant's conviction or the fairness of his trial in the absence of Dalton. The Government's action does not amount to a willful affront to justice which would, in itself, render the conviction unpalatable. No bad faith concealment of exculpatory evidence is involved. Cf. Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217; Miller v. Pate, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690. The Government did not deliberately frustrate defendant's attempts to obtain the evidence possessed by Dalton. Cf. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L. Ed.2d 639; Smith v. Illinois, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956. We cannot, on this record, presume that Dalton possessed evidence favorable to defendant Perlman. The Government made available to defendant all material obtained from Dalton, yet Perlman has been unable to point to anything even suggesting possession of evidence favorable to himself. Cf. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215; Giles v. Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737. Defendant failed to contradict a single item of evidence produced by the Government. That evidence, quite apart from the damning statements of Dalton related by Bottorff at trial, convincingly substantiates this conviction. Disingenuous speculation, not reasonable doubt, is all that supports the expectation that Dalton, already having pled guilty to the indictment, could supply evidence which might raise a reasonable doubt as to Perlman's guilt. At the oral argument, Perlman's counsel suggested that Dalton's testimony might have shown that under 26 U. S.C. § 4742(a), he did not give any written order form to Perlman; but, as the district court recognized, the critical issue was whether Bottorff had given Dalton such a form, and Bottorff testified that he did not.

### Admission of Tape Recording

■ Defendant's remaining objections pertain to the trial court's reception into evidence of a recording made by the Government of a telephone conversation between agent Bottorff and Perlman occurring on December 18, 1965. The conversation was admissible because the recording took place two years prior to the effective dates of the decisions in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576, and United States v. White, 405 F.2d 838 (7th Cir. 1969), certiorari granted, 394 U.S. 957, and was therefore not barred as evidence in this case. United ed States v. Escobedo, 430 F.2d 14 (7th Cir. 1970). Since there was an adequate foundation and verification of the accuracy of the tape by agent Bottorff, there was also no error in the admission of the tape itself.

We have considered the other points raised by defendant and conclude that they are without merit. Therefore, the motion to reconsider the April 21, 1970, order of affirmance is denied.

---

5. Perlman had already been arraigned and it would seem reasonable to require sufficient coordination between the various governmental institutions to permit notification thereafter and at least an opportunity for a defendant to determine for himself whether any benefit might be derived from the testimony of his codefendant. This would permit the various interests to be balanced and would avoid embarrassment to the Government in the future.