**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Henry WHITE, Raymond Council and
Bernard Rogers,
Defendants-Appellants.**

**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Henry WHITE, Defendant-Appellee.**

**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**$38,394 U. S. CURRENCY,
Defendant-Appellee,**

**Henry White, Claimant.**

**Nos. 80–2319, 80–2338, 80–2346,
80–2121 and 80–2527.**

United States Court of Appeals,
Seventh Circuit.

Argued May 26, 1981.

Decided Sept. 22, 1981.

Rehearing and Rehearing En Banc in
Nos. 80–2121 and 80–2527 Denied
Nov. 3, 1981.

Ira Raphaelson, Kathryn Goldwasser, Asst. U. S. Attys., Chicago, Ill., for plaintiffs.

Michael G. Cheronis, Federal Defender Program, Chicago, Ill., Laurence J. Bolon, Gail A. Niemann, Jenner & Block, Chicago, Ill., for appellee.

Before FAIRCHILD, Circuit Judge, MARKEY,* Chief Judge, and CUDAHY, Circuit Judge.

CUDAHY, Circuit Judge.

In these consolidated appeals, defendants Henry White, Raymond Council and Ber-

---

\* The Honorable Howard T. Markey, Chief Judge of the United States Court of Customs and Patent Appeals, is sitting by designation.

nard Rogers appeal their criminal convictions in a bench trial for possession of heroin with intent to distribute. The United States also appeals from two rulings in a related attempt to have defendant Henry White forfeit $38,394 in currency seized during the criminal investigation.

## I. FACTS

Federal and local authorities conducted a joint four-month investigation into the suspected narcotics trafficking of defendant White. White sold numerous small amounts of heroin to undercover Chicago police officer Christine Kolman over a period of three months. A portion of these sales were consummated at White's residence. At least one sale occurred in a nearby upstairs apartment that White also used as his living quarters.

On March 10, 1980, defendant White offered to supply the undercover officer with "multi-ounce quantities of heroin on short notice." Defendant White stated that he would have at least eight ounces of heroin for her the next day. Based upon this information, the authorities began to plan for the arrest of White on March 11.

Early in the morning of March 11, the arrest preparations began. A team of officers was deployed around White's apartment for a day-long surveillance. Administrative approval and sufficient cash ($20,400) for the purchase price of the anticipated heroin was obtained from the federal Drug Enforcement Administration (DEA). It was decided that DEA Agent John Duckhorn would accompany Officer Kolman in going to White's apartment for the purchase. The plan was to enter the apartment, examine the heroin, have Officer Kolman return to her car for the money and then have a team of agents enter White's apartment to make the arrest. The agents outside the apartment would be able to monitor the events inside the apartment by means of a hidden radio transmitter strapped to Officer Kolman.

At 9:00 p.m. on March 11, 1980, White telephoned Officer Kolman and informed her that he had the heroin. At approximately 11:30 p.m., Officer Kolman and Agent Duckhorn entered White's apartment to make the purchase. A number of other officers were positioned outside the building.

Defendant Council admitted Officer Kolman and Agent Duckhorn into White's apartment. Defendants Rogers and White were in the kitchen, where White was sifting a package of white powder on the sink. Officer Kolman introduced Agent Duckhorn as her "old man's partner." Agent Duckhorn remarked that White did not appear to have the full eight ounces of heroin that he had promised. White replied that he could get more and went out the back door to get the balance of the eight ounces. White left the original heroin with defendants Council and Rogers and the two undercover agents.

White returned to the apartment about 20 minutes later with another bag of white powder. Agent Duckhorn then sent Officer Kolman to get the money from her car. White told Rogers to accompany Officer Kolman to the car and asked Rogers if he had his "piece." Rogers said that he did, asked for the keys to White's apartment and went out to the car with Officer Kolman. At the car, two government agents seized Rogers and placed him under arrest. Using the keys obtained from Rogers, various police officers entered White's apartment without knocking. Defendants White and Council were arrested and a quantity of a substance containing heroin was seized from the counter next to the kitchen sink.

Allegedly acting with White's consent, several agents then went upstairs to White's second apartment. The agents knocked on the door and informed the woman who answered that White had been arrested and had consented to the search of the apartment. The agents then entered the apartment and commenced their search. During the search, the agents seized $42,194 in cash from a flight bag in a closet. The money was secured by rubber bands around

piles of bills and was placed inside several purple cloth bags.

The grand jury indicted the defendants for possession of heroin with intent to distribute as well as other firearms offenses not relevant to this appeal. Prior to trial, White filed a motion under Rule 41(e) seeking the return of the money. The district court granted the motion based upon the unconstitutionality of the seizure. The government returned the money in compliance with this ruling and then immediately reseized the money and brought a civil forfeiture action under 21 U.S.C. § 881 (1978). The district court granted summary judgment for White in the forfeiture action because of the collateral estoppel effect of its earlier determination, on consideration of White's Rule 41(e) motion, that the money had been illegally seized. The summary judgment decision has been published. *United States v. $38,394 U.S. Currency*, 498 F.Supp. 1325 (N.D.Ill.1980).

## II. THE ISSUES

The defendants each raise different issues regarding their convictions for possession of heroin with intent to distribute. Defendant White challenges, on Fourth Amendment grounds, the warrantless entry into his apartment to effect his arrest and seeks to suppress the evidence seized therein. Defendants Rogers and Council both raise the question whether the evidence was sufficient in their respective cases to establish their constructive possession of the heroin. The government also appeals the dismissal of its civil forfeiture proceeding against White as well as the granting of White's motion under Rule 41(e) of the Federal Rules of Criminal Procedure for the return of his seized property.

### A. Defendant Council: Constructive Possession

Defendant Council challenges the sufficiency of the evidence on the issue of his constructive possession of the heroin. The district court found that the evidence showed beyond a reasonable doubt that Council was in constructive possession of the heroin because he exercised dominion and control over it. We must affirm the conviction unless the evidence, taken in a light most favorable to the government, would not permit a finding of constructive possession beyond a reasonable doubt. *See United States v. Perlman*, 430 F.2d 22, 24 (7th Cir.), *cert. denied*, 400 U.S. 832, 91 S.Ct. 64, 27 L.Ed.2d 63 (1970) (bench trial).

Council had been present at the March 10, 1980, meeting at which Officer Kolman and White negotiated the price for the heroin at issue here. Council indicated at that time, while Officer Kolman was negotiating a bulk price for heroin, that "we are barely making enough money, ... barely making a profit" at the nondiscounted price. While Council did not suggest a price, he surely indicated that he was due to receive some of the proceeds of the sale. Council's interest in the sale price was also confirmed by a later event. On the night of the arrests, while White was out of the apartment getting the remaining quantity of heroin, Council asked Rogers to verify the quantity price using his calculator. Participation in such negotiations over the price to be paid for the drug is quite probative of Council's constructive possession of the heroin. *United States v. Marquez*, 462 F.2d 620, 621 (9th Cir. 1972), *cert. denied*, 413 U.S. 921, 93 S.Ct. 3069, 37 L.Ed.2d 1043 (1973) (per curiam).

While White was out of the apartment, Council "snorted" small quantities of the heroin on the sink on two occasions. The district court did not rely heavily on this to support the finding of constructive possession. Use of a portion of narcotics by a defendant is relevant, however, to the extent of his control over the larger quantity. *See United States v. Gonzalez*, 442 F.2d 698, 702–03 (2d Cir.), *cert. denied*, 404 U.S. 845, 92 S.Ct. 146, 30 L.Ed.2d 81 (1971).

As a final matter, Council indicated that he was in a position of control with respect to the heroin transaction of March 11th,

when, in the absence of White, Council affirmatively answered inquiries about a change in sites for future heroin transactions. If Council were merely a casual bystander to the heroin sale, he would have been unable to agree that future deliveries could be made at Comiskey Park.

Based upon these factors as well as others, we believe it clear that the district court could find that Council was in constructive possession of the heroin. Accordingly, we affirm the district court's judgment of conviction of Council for possession of heroin with intent to distribute.

### B. Defendant Rogers: Constructive Possession

 Defendant Rogers also challenges the sufficiency of the evidence against him on the issue of constructive possession. As the district court noted, the evidence against Rogers was much weaker than that against Council.[1] The district court still found that the evidence against Rogers established, beyond a reasonable doubt, his constructive possession of the heroin in question. Viewing the evidence in a light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), we affirm the conviction of defendant Rogers for possession of heroin with intent to distribute.

The district court relied upon two instances of Rogers' involvement to support the finding of guilt. First, Rogers, like Council, agreed to conduct future sales at Comiskey Park. As noted in Part A, *supra* at pp. 1181–1182, with respect to defendant Council, this is a significant indicator of Rogers' control over this heroin transaction and evidence of his ability to assure future deliveries. A person having an "association with those [like White] having physical custody of the drugs so as to enable him to assure their production, without difficulty, to a customer as a matter of course may be

held to have constructive possession." *United States v. Calabro*, 449 F.2d 885, 891–92 (2d Cir. 1971), *cert. denied*, 404 U.S. 1047, 92 S.Ct. 728, 30 L.Ed.2d 735 (1972) (quoting *United States v. Jones*, 308 F.2d 26, 30 (2d Cir. 1962) (*en banc*)).

Second, Rogers went to the car with Officer Kolman when she went to get the money for the transaction. White instructed Rogers to "go back with her to the car," and asked if Rogers had his "piece." Rogers responded "yes," asked for the keys to White's apartment and went outside with Officer Kolman where he was arrested. The district court felt that this action by Rogers facilitating the payment was "inextricably intertwined" with the possession of the heroin. We agree with the reasoning of the district court that the actions of Rogers were probative of his dominion over the heroin itself. Indeed, the payment aspect of the transaction was the most important part of this drug sale. Rogers' role in overseeing the collection of the money attests to his position of authority vis-a-vis the entire transaction. Rogers argues that the evidence established that he merely aided and abetted the transaction. *See United States v. Jones*, 308 F.2d 26 (2d Cir. 1962) (*en banc*). We believe, however, that his accompanying Officer Kolman to get the funds and his agreement to future deliveries at Comiskey Park, when construed in a light most favorable to the Government, are sufficient evidence of constructive possession to sustain his conviction.

### C. Defendant White: Warrantless Entry

 Under *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), "the Fourth Amendment ... prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." *Payton*, 445 U.S. at 576, 100 S.Ct. at 1375. *Payton*, did not purport to decide, however,

---

1. Unlike Council, there was no evidence of Rogers' involvement in the smaller heroin sales that preceded this transaction. Rogers was present at White's apartment on March 10th but left shortly after Officer Kolman arrived for a heroin transaction. Officer Kolman did not observe Rogers engaging in any activity associated with illegal narcotics at that time.

whether an initial consensual entry would justify a subsequent warrantless arrest. *Id.* at 583, 100 S.Ct. at 1378. The district court found *Payton's* warrant requirement inapplicable in the instant case because Officer Kolman and Agent Duckhorn entered White's apartment with White's consent. We agree that White's motion to suppress the evidence gathered as a result of the purportedly illegal entry should have been denied and therefore affirm his conviction.

White argues that his consent was obtained by deceit because he was not aware of the true identities of the undercover officers who were admitted to his apartment on March 11, 1980. But, White's argument is not that the deceit rendered his consent involuntary. Rather, White argues that allowing consent by deceit after probable cause sufficient to get an arrest warrant has arisen would vitiate *Payton's* arrest warrant requirement.

We would be more receptive to White's argument if the entry had been *solely* to effect his arrest.[2] In the present case, however, the deceitfully obtained consent was part of an on-going investigation into White's heroin trafficking. Even accepting White's argument that there was probable cause sufficient to get an arrest warrant prior to the entry, we do not believe that an arrest warrant need be obtained as soon as probable cause attaches. Admittedly, the officers conducting this investigation planned to arrest White that evening in his apartment if White produced the heroin as promised. At the same time, if White did not have the heroin for sale, the arrests would not have been made. Pretrial Tr. of July 9, 1980, at 258. The entry into White's apartment served investigative purposes and, as such, the entry was permissible even where White's consent was obtained by a ruse. *Lewis v. United States*, 385 U.S. 206, 209–11, 87 S.Ct. 424, 426–27, 17 L.Ed.2d 312 (1966).[3]

Further, we are unable to see how the requirement of an arrest warrant in the instant case would add to the protection accorded by *Payton*. Warrant requirements interpose the decision of a "neutral and detached magistrate" to protect individuals from unfounded invasions of their privacy by *preventing* unwarranted intrusions. In the instant case, however, a magistrate's determination that probable cause for an arrest warrant was lacking (should such a determination have been made) would not have prevented the ultimate intrusion. The undercover officers would still have been admitted to White's home by posing as heroin purchasers, an entry condoned by *Lewis*, 385 U.S. at 210–11, 87 S.Ct. at 427, and the officers would have arrested White when they observed the heroin in his possession. It serves no purpose to require an arrest warrant where the same intrusion would occur whether or not the magistrate issues the warrant. We thus agree with the district court's denial of White's suppression motion and affirm his conviction.[4]

### D. The United States: White's Rule 41(e) Motion for the Return of his Property

Prior to trial, White moved pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure for the return of the money seized from his upstairs apartment. Rule 41(e) provides that

---

**2.** This appears to be the factual pattern of the two principal cases relied upon by White before this court. *United States v. Gray*, 626 F.2d 102, 104–05 (9th Cir. 1980); *United States v. Johnson*, 626 F.2d 753, 757 (9th Cir. 1980).

**3.** White also argues that there were actually two entries into his apartment, the second being the entry using White's keys after the arrest of Rogers. We do not view this latter entry as being a separate intrusion in view of the fact that Agent Duckhorn remained in the apartment at all times after his initial consen-

sual entry. We thus find it unnecessary to consider whether the alleged "second entry" was independently justified by the exigent circumstance of potential harm to the undercover agent within White's apartment.

**4.** White concedes that if the entry was permissible, his arrest and the seizure of the heroin were also permissible given that a crime had been committed in the presence of Agent Duckhorn.

[a] person aggrieved by an unlawful ... seizure may move the district court ... for the return of the property ... which was illegally seized.

Fed.R.Cr.P. 41(e). The district court granted White's motion because the seized money was unrelated to the indictment in the instant case for possession of eight ounces of heroin. The United States appeals that ruling.[5]

■ The reasoning of the district court voiding the seizure would be more persuasive if White's Rule 41(e) motion posed the question whether the Government's continued retention of the money was lawful in light of the actual crime for which the grand jury indicted White. The issue raised by a Rule 41(e) motion, however, concerns the appropriateness of the seizure *at the time it was made* given the information possessed by the authorities at the time of the seizure. A lawful seizure must be based upon a "nexus" between the item seized and particular criminal behavior. *Warden v. Hayden*, 387 U.S. 294, 307, 87 S.Ct. 1642, 1648–49, 18 L.Ed.2d 782 (1967). The "nexus" must be one known to the officers at the time of the seizure and may not be based upon mere speculation. *United States v. One Residence and Attached Garage of Anthony J. Accardo*, 603 F.2d 1231, 1233–34 (7th Cir. 1979).

■ At the time of the seizure in the instant case, the agents knew that White had been involved in several previous narcotics transactions with an undercover officer, at least one of which had taken place in White's upstairs apartment where the money was found. The agents were aware that these previous purchases had been made with pre-recorded bills although at the time of seizure the agents were not aware whether these pre-recorded bills were among those seized. These facts are on all fours with *United States v. Jones*, 518 F.2d 384 (7th Cir.), *cert. denied*, 423 U.S. 997, 96 S.Ct. 426, 46 L.Ed.2d 371 (1975), which we regard as controlling.[6] This court's conclusion in *Jones* is thus equally appropriate here:

> when the officers found a substantial quantity of cash in large bills, they could reasonably believe that this was the fruit of criminal behavior, even though the actual identification of the pre-recorded funds did not occur until later.

*Jones*, 518 F.2d at 389. The agents could lawfully seize the $42,194 found in White's apartment because the officers could reasonably believe that the money was the "fruit" of the prior heroin sales involving pre-recorded funds. Admittedly, the agents seized over $40,000 from White's apartment while the prior purchases using pre-recorded bills amounted to a much smaller sum. The seizure of the larger sum was permissible, however, as in *Jones*, because the agents could not readily determine what portion of the total seized was represented by the pre-recorded bills used in the earlier heroin sales.[7] We therefore reverse the decision of the district court granting White's motion for the return of his property and remand for whatever further proceedings are appropriate.[8]

### E. The United States: The Civil Forfeiture Proceeding

■ After being ordered to return White's cash based upon White's successful

---

**5.** We find no merit to White's argument that the Government waived its right to appeal the Rule 41(e) order because it complied with the order by returning the money to White. *Geneva Towers Tenants Organization v. Federated Mortgage Investors*, 504 F.2d 483, 485 n.2 (9th Cir. 1974).

**6.** White has not even attempted to distinguish the *Jones* decision, relied upon by the Government, from the instant case. White relies heavily upon this court's decision in *Accardo. Accardo* is readily distinguishable, however, because there the authorities seized a large sum of money found in the home of a suspected underworld figure despite the absence of evidence linking the money to any specific criminal acts.

**7.** In fact, $3,800 in pre-recorded funds representing five previous heroin sales was identified among the $42,194 seized from White's apartment.

**8.** On remand, the district court is free to consider whether the search of the upstairs apartment, as distinguished from the seizure of the cash, was lawful. White challenges whether he actually consented to the search.

Rule 41(e) motion, the Government commenced two civil forfeiture proceedings under 21 U.S.C. § 881(a)(6) (1978). That provision authorizes forfeiture proceedings against the proceeds of illegal narcotics transactions. One proceeding, not at issue on this appeal, sought the forfeiture of the $3,800 in pre-recorded funds seized from White's apartment. White did not contest that forfeiture action. The second proceeding sought the forfeiture of the remaining $38,394 of the seized money.

The district court granted White's motion for summary judgment on the second forfeiture complaint because the government was collaterally estopped from establishing that it had obtained the money "under authority of law." *United States v. $38,394 U.S. Currency*, 498 F.Supp. 1325, 1326–27 (N.D.Ill.1980). The prior determination on consideration of White's Rule 41(e) motion that the seizure was unconstitutional was the source of the collateral estoppel. Because we have reversed that determination and hold that the seizure was lawful, we vacate the judgment for White in the civil forfeiture action and remand for further proceedings.

Affirmed In Part, Reversed In Part And Vacated And Remanded In Part.