In the

# United States Court of Appeals
## For the Seventh Circuit

_____

Nos. 15-1740, 15-2637

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

WILLIAM RIVERA and JUAN DUENAS,

*Defendants-Appellants.*

_____

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 CR 563 — **Thomas M. Durkin**, *Judge.*

_____

ARGUED JANUARY 27, 2016 — DECIDED MARCH 16, 2016

_____

Before POSNER, KANNE, and HAMILTON, *Circuit Judges.*

POSNER, *Circuit Judge.* The defendants pleaded guilty to conspiring to possess and distribute cocaine, in violation of federal law, 21 U.S.C. §§ 846, 841(a), and were sentenced to 60 months (Rivera) and 48 months (Duenas) in prison. But they reserved the right to appeal from the district judge's denial of their motions to suppress evidence consisting of drugs that federal agents had seized in searches of Duenas's garage and Rivera's truck, which was in the garage. The

agents didn't have search warrants, and the defendants contend that the searches therefore violated the Fourth Amendment. Contrary to popular impression, the Fourth Amendment does not require a warrant to search or to arrest—ever; its only reference to warrants is a condemnation of general warrants. (The amendment reads in full: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.") The amendment has nevertheless been interpreted to require warrants in many cases—but not, as we'll see, in cases such as this.

A confidential informant (with the help of another man, whom we can ignore) arranged to purchase cocaine that was being sold at Duenas's garage. Trailed by federal agents at a discreet distance, the informant drove to the garage, parked outside, entered (the garage door, open when he arrived, closed after he entered), and there discussed the transaction with Duenas and Rivera. He then left, ostensibly to get the money for the purchase of the cocaine from his car. Instead he got back into the car (which was parked nearby), drove a short distance, parked, and phoned one of the federal agents to report that there indeed was cocaine in the garage, in Rivera's truck. Agents arrived shortly, arrested Duenas outside the open garage and Rivera inside it, and then searched the garage and found and seized two kilograms of cocaine from Rivera's truck. Between the confidential informant's departure from the garage and the agents' arrival, only about three minutes had elapsed.

The informant (of course not known to Duenas and Rivera to be such) had entered the garage with the consent of Duenas, the owner of the garage, and of Rivera, the owner of the truck that contained the drugs to be sold to the informant. Although the informant had returned to his car and driven a short distance off, Duenas and Rivera had remained, the garage door was now open, and it is a fair inference that they were expecting the informant to return soon with the money.

Obviously they had *consented* to the informant's returning, and on this basis the district judge invoked the curious, or at least curiously named, doctrine of "consent once removed." If an informant is invited to a place by someone who has authority to invite him and who thus consents to his presence, and the informant while on the premises discovers probable cause to make an arrest or search and immediately summons help from law enforcement officers, the occupant of the place to which they are summoned is deemed to have consented to their presence. See *United States v. Jachimko*, 19 F.3d 296 (7th Cir. 1994), and cases cited in it. On this basis the district judge rejected the defendants' Fourth Amendment claim.

At first glance the doctrine of "consent once removed" is absurd. If one thing is certain it's that Duenas and Rivera would never have consented to the entry of federal drug agents into Duenas's garage, where the drugs to be bought by the informant were stored. The doctrine thus cannot, despite its name, be based on consent. This is well recognized. See, e.g., John F. Decker & Kathryn A. Idzik, "Disguising A New Exception to the Warrant Requirement: An Examination of the Consent-Once-Removed Doctrine and Its Hollow

Justifications," 61 *Drake L. Rev.* 127, 160–68 (2012); Ben Sob-czak, "The Sixth Circuit's Doctrine of Consent Once Re-moved: Contraband, Informants and Fourth Amendment Reasonableness," 54 *Wayne L. Rev.* 889, 902–08 (2008). As Sobczak points out, citing *Georgia v. Randolph*, 547 U.S. 103 (2006), if you invite someone to a party at your house he can't, without your express or implied permission, bring others with him; that is, one can't without permission extend an invitation that one has received to other persons, especial-ly ones unknown to the host. It's thus difficult to understand what was intended by the statement in *United States v. Akinsanya*, 53 F.3d 852, 856 (7th Cir. 1995), that "when Akinsanya gave his consent to Gilani to enter his apartment, he effectively gave consent to the agents with whom Gilani was working."

But though misnamed, the doctrine has the following kernels of validity. First, an informant's job, especially in cases such as this that come from the frequently violent world of drug trafficking, is often (though not always, even in the drug world, see, e.g., *Richards v. Wisconsin*, 520 U.S. 385, 393 (1997); *United States v. Williams*, 604 F.2d 1102, 1122–23 (8th Cir. 1979)), risky, and likewise that of a lone under-cover officer. The informant in our case may well have feared that if he returned to the garage with the money for the drugs, Rivera and Duenas would take the money but not give him the drugs—and maybe would kill him to prevent his retaliating against them for stealing his money. (He would be likely to have fared no better with them had he re-turned to the garage without any money—how would he have explained *that* to them?) It was therefore reasonable for him to arrange with the agents that when he was about to return to the garage with the money he would call them and

they would enter the garage at his heels in order to protect him. *United States v. Jachimko*, *supra*, and the cases cited in it, rightly emphasize the lawful protective purpose of the misnamed "consent once removed" doctrine. See, e.g., *United States v. Yoon*, 398 F.3d 802, 809–10 (6th Cir. 2005). And in this case obtaining a search warrant on the basis of what the informant saw in the garage would not have been practicable. The interval between the informant's notifying the agents that he had seen drugs in the garage and the agents' swooping down on it and arresting its occupants was too short—about one minute—for the agents to have been able to obtain a warrant.

But one doesn't need the opaque label "consent once removed" to justify authorizing such a response to an emergency situation. The doctrine of "exigent circumstances" (where "exigent" means emergency) allows such a response in this case because the interval between the informant's notifying the agents of the presence of the cocaine in the garage and the agents' arrival at the scene was so short. They could have gotten a search warrant had they delayed their arrival—but by then Rivera and Duenas, worried by the failure of the buyer (not known to them to actually be an informant) to show up with the money, might have removed the cocaine from the truck and hid it elsewhere.

The agents upon arrival in the garage could have phoned for warrants, meanwhile ordering Rivera and Duenas to remain in the garage. But the order would have been a seizure within the meaning of the Fourth Amendment—without a warrant.

We note parenthetically that consent to enter need not be invalid just because the person giving it lacks relevant

knowledge of the person to whom he's giving it. In *United States v. White*, 660 F.2d 1178 (7th Cir. 1981), two undercover agents obtained consent to enter the defendant's apartment by concealing their identities as police officers. That was "real" consent, though uninformed. One of the agents left after a while, ostensibly to get the money for a deal (like the informant in our case)—and instead returned with other agents. The court declined to consider their entry "a separate intrusion" given that one agent had remained inside throughout. *Id*. at 1183 n. 3. The defendant might have consented to the entry of those other agents as well, had they concealed their identity as police officers. And had the informant in our case returned to the garage with a police officer disguised as a drug dealer, and the informant had told Duenas and Rivera that the newcomer was an expert in assessing the quality of a cocaine sample, they (Duenas and Rivera) might have consented to his presence.

But there was no newcomer invited or even permitted to join the party in this case. Nor was the informant, having driven away from the garage before the agents entered, and anyway not having returned, in danger from Rivera or Duenas such as would have justified his summoning law enforcement for aid and protection—he was well out of harm's way. This case seems therefore not to fit either of the rationales that we've identified as justifying the "consent once removed" doctrine. But the district judge had a third ground, of which more later in this opinion, for denying the defendants' suppression motion—"inevitable discovery." See, e.g., *Nix v. Williams*, 467 U.S. 431, 444 (1984); *United States v. Witzlib*, 796 F.3d 799, 802–03 (7th Cir. 2015); *United States v. Tejada*, 524 F.3d 809, 812–13 (7th Cir. 2008). If officers search without a warrant, but it is certain they'd have obtained one

had they applied for it, their omission is deemed harmless, and so is ignored.

We can't find a case that mentions "consent once re-moved" in which the decision in favor of the government could not have been supported on another ground: *United States v. White, supra*, 660 F.2d at 1183 n. 3 (exigent circum-stances); *United States v. Janik*, 723 F.2d 537, 547–48 (7th Cir. 1983) (actual consent to entry); *United States v. Diaz*, 814 F.2d 454, 457–58 (7th Cir. 1987) (inevitable discovery); *United States v. Akinsanya, supra*, 53 F.3d at 855–56 (same); *United States v. Paul*, 808 F.2d 645, 647–48 (7th Cir. 1986) (same). In light of these decisions we are inclined to think that the term "consent once removed" is not only opaque, but expendable.

Once the confidential informant alerted the agents to the fact that there was cocaine in Duenas's garage, they had probable cause to search the garage. They could have ob-tained a search warrant by relaying what the informant had told them to whatever magistrate was available to rule on a warrant application. But there was no time. The agents had to move fast because Rivera and Duenas might panic when they realized that the (unknown to them) informant might not be returning, and remove the drugs from the garage. The certainty (just as in *United States v. Pelletier*, 700 F.3d 1109, 1117 (7th Cir. 2012) and many other cases) that the agents could have gotten a warrant to conduct a search that would have revealed the drugs should alleviate concern with the warrantless search and arrests in this case. And if further justification is required (it isn't), there is the doctrine of harmless error, which usually refers to procedural errors in a trial but is applicable as well to searches and arrests. As ex-

plained in *United States v. Stefonek*, 179 F.3d 1030, 1035–36 (7th Cir. 1999) (citations omitted),

> Concern with the frequent disproportionality of the sanction of exclusion has led judges to create exceptions to the exclusionary rule, itself a rule of federal common law (that is, of judge-made law) rather than a part of the Fourth Amendment itself and so amenable to judge-made adjustment. … [T]he exception that is most pertinent to this case goes by the name of "inevitable discovery" and refuses to suppress evidence seized in an unconstitutional search if it is shown that the evidence would ultimately have been seized legally if the constitutional violation had not occurred. In other words, just as careless or even willful behavior is not actionable as a tort unless it causes injury, so there must be a causal relation between the violation of the Fourth Amendment and the invasion of the defendant's interests for him to be entitled to the remedy of exclusion. In a case of inevitable discovery, the defendant would by definition have been no better off had the violation of his constitutional rights not occurred, because the evidence would in that event have been obtained lawfully and used lawfully against him … . There is an exception for errors deemed to go to the very heart of due process, but we know that a violation of the Fourth Amendment is not such an error, because the Supreme Court greatly restricts its use as the basis for a collateral attack on a state conviction. … [A] Fourth Amendment violation committed before any litigation began, though not a harmless *trial* error, no more automatically invalidates the conviction than a harmless trial error would.

In sum, the search and arrests in this case invaded no lawful interest, no protected right of privacy of the defendants; a pause to enable warrants to be obtained would have risked the disappearance of the contraband; and an attempt

to obtain warrants before the informant phoned in the information that he'd found the contraband might well have been denied for lack of proof of probable cause, thus distinguishing this case from cases such as *United States v. Camou*, 773 F.3d 932, 943 (9th Cir. 2014), in which "police had probable cause but simply did not attempt to obtain a warrant." The important point is that had time permitted, the agents would without question *have* obtained a warrant. See *United States v. Pelletier*, *supra*, 700 F.3d at 1117.

Because "the officer[s] who conducted the search complied with then-binding precedent, the evidence obtained from the search should not be excluded[,] because the search was conducted with the objectively reasonable good-faith belief that it was lawful." *United States v. Gary*, 790 F.3d 704, 705 (7th Cir. 2015). (The binding precedent—actually precedent*s*—in this case are the "consent once removed" cases—with which the agents faithfully complied.)

The clincher is our recent decision in *United States v. Witzlib*, *supra*, 796 F.3d at 802, which presented a parallel issue to this case, though it involved contraband explosives rather than contraband drugs. We offered "an alternative justification, besides consent and exigency, for the initial search (which happens also to have been the search that turned up by far the most important evidence of Witzlib's guilt). Had the police sought a search warrant from the moment they finished talking to the uncle and aunt, it's a certainty that it would have been issued—such was the probable cause created by what they told the police. So whether they got a warrant or not there was no way that Witzlib's fireworks stash was going to remain undiscovered by the authorities" (citations omitted).

Similarly, had the agent in our case followed routine procedure—which as we said he would have done had he not been planning to rely on consent—a warrant would certainly have been issued on the basis of the informant's knowledge: he had seen the cocaine stash in Rivera's truck. So for Witzlib's stash of explosives substitute our defendants' cocaine stash and one sees that *Witzlib* governs this case. And *Witzlib* does not stand alone. For similar cases similarly decided see *United States v. Pelletier*, *supra*, 700 F.3d at 1117; *United States v. Marrocco*, 578 F.3d 627, 639–40 n. 21 (7th Cir. 2009); *United States v. Are*, 590 F.3d 499, 507 (7th Cir. 2009). If ever a warrantless search and seizure were warranted, it was in this case. It would be a miscarriage of justice to allow the defendants to go scot-free in so open and shut a case of criminal drug trafficking as this case is.

AFFIRMED

HAMILTON, *Circuit Judge*, concurring in part and concurring in the judgments. I join the portion of the majority's opinion that jettisons the odd doctrine of "consent once removed" to justify some warrantless entries and searches. I also agree that we should affirm the defendants' convictions, though on a much narrower ground than my colleagues offer.

*"Consent Once Removed"*: To avoid seeking a warrant and to justify the warrantless entry and search, the agents, the prosecution, and the district court relied primarily on the theory of consent once removed. Our precedents provided some support for that theory, at least as a general matter, but no prior case had stretched that doctrine as far as the agents stretched it here, to enter and search the private space (the garage) after the informant had left that space and was no longer in a danger zone.

By recognizing that the fictional notion of "consent once removed" should be abandoned, the majority opinion improves the Fourth Amendment law of this circuit. Most of the cases using the doctrine to avoid suppressing evidence should be understood as applications of inevitable discovery or exigent circumstances, allowing the police to protect an undercover agent or confidential informant who was in danger.

*Inevitable Discovery*: I am convinced that we should affirm the denial of defendants' motions to suppress based on the "inevitable discovery" exception to the exclusionary rule, at least under our circuit's precedents.

The inevitable discovery exception does not apply merely because the police had probable cause to search and could

have obtained a search warrant. To invoke the doctrine under our circuit precedent, "the government must show (1) 'that it had, or would have obtained, an independent, legal justification for conducting a search that would have led to the discovery of the evidence'; and (2) 'that it would have conducted a lawful search absent the challenged conduct.'" *United States v. Pelletier*, 700 F.3d 1109, 1116 (7th Cir. 2012), quoting *United States v. Marrocco*, 578 F.3d 627, 637–38 (7th Cir. 2009); see generally *Nix v. Williams*, 467 U.S. 431, 442–44 (1984) (murder victim's body inevitably would have been discovered by search already under way when police obtained information by violating suspect's right to counsel).

The first requirement was satisfied here. The agents had probable cause when their informant left the defendants' garage and signaled that he had seen the cocaine. The second requirement presents a much closer question in my view. These agents had no plans to seek a search warrant and no interest in doing so. From the outset of the operation, they planned to claim consent once removed to justify a warrantless entry after the informant gave the signal.

To invoke the inevitable discovery exception, some other circuits require the government to show it was actively pursuing other, lawful grounds for obtaining the evidence. See, e.g., *United States v. Cherry*, 759 F.2d 1196, 1205–06 (5th Cir. 1985) (government would need to show it was actively pursuing a substantial, alternative line of investigation at time of constitutional violation); *United States v. Conner*, 127 F.3d 663, 667 (8th Cir. 1997) (same); *United States v. Virden*, 488 F.3d 1317, 1323 (11th Cir. 2007) (same); *United States v. Camou*, 773 F.3d 932, 943 (9th Cir. 2014) (exception does not apply "to excuse failure to obtain search warrant where police had

probable cause but simply did not attempt to obtain a warrant"); see generally *The Exclusionary Rule*, 44 Geo. L.J. Ann. Rev. Crim. Proc. 249, 265 n.670 (2015).

In *United States v. Tejada*, 524 F.3d 809, 812–13 (7th Cir. 2008), however, we explained why we have rejected the active pursuit requirement. We have opted instead to allow the government to invoke the inevitable discovery exception if it can "prove that a warrant would certainly, and not merely probably, have been issued had it been applied for." *Id*. at 813. The government has satisfied that standard in this case. After the informant saw the cocaine in the defendants' garage and signaled that information to the agents, any magistrate judge would have issued immediately a warrant to search the garage. And as the majority points out, even if the agents had waited to obtain a warrant, the defendants were not going anywhere. The agents had ample authority to detain them (i.e., to seize them) while they waited for the warrant. See *Illinois v. McArthur*, 531 U.S. 326 (2001).

*Other Grounds*: I am not persuaded, however, by the other grounds offered by my colleagues to affirm the denial of the motion to suppress. The circumstances here were not exigent in that there was no threat of danger to any person and no indication that the evidence was in danger of being destroyed. See *Kentucky v. King*, 563 U.S. 452, 459–62 (2011) (summarizing exigent circumstances exception); *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). At worst, if the defendants had become nervous about the informant's failure to return as quickly as expected, they might have hidden the cocaine again. I find it hard to believe, though, that capable federal agents would not have found two kilograms of cocaine in a space as small as a garage.

The majority also excuses the agents' failure to obtain a search warrant as a "harmless error," quoting at length from *United States v. Stefonek*, 179 F.3d 1030, 1035–36 (7th Cir. 1999). The full scope of the *Stefonek* opinion is not entirely clear, but I do not read it as providing a new distinct and independent ground for avoiding the exclusionary rule.

Finally, the majority says the exclusionary rule should not apply here because the agents were relying reasonably on then-binding circuit precedent. See *Davis v. United States*, 564 U.S. 229 (2011); *United States v. Gary*, 790 F.3d 704, 705 (7th Cir. 2015). The warrantless search was not justified in this case by our prior "consent once removed" cases. In fact, the government did not try to make a *Davis* argument to excuse the warrantless search. In all of our prior cases using the theory, at least one undercover officer or informant who had been admitted to the premises was still present or at least still in a danger zone. That was not true here. The *Davis* exception for good faith reliance on controlling precedent does not reach so far as to excuse mistaken efforts to *extend* controlling precedents.

For these reasons, I concur in the judgments.