# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 07-1395

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

APOLINAR TEJADA,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 CR 810—**Elaine E. Bucklo**, *Judge.*

———————

ARGUED NOVEMBER 14, 2007—DECIDED APRIL 10, 2008

———————

Before POSNER, WOOD, and WILLIAMS, *Circuit Judges.*

POSNER, *Circuit Judge.* The defendant pleaded guilty to federal drug offenses (and was sentenced to 120 months in prison), reserving however his claim that the drugs used in evidence against him had been seized in violation of the Fourth Amendment by DEA agents who did not have a search warrant. The district judge, after a hearing on the defendant's motion to suppress the evidence, ruled that the drugs had been seized as a lawful incident to his arrest and alternatively that they would inevitably have been discovered.

One of the agents, posing as a buyer of cocaine, met with the defendant in the parking lot of a restaurant and was shown by him a small blue travel bag containing the cocaine that the agent had agreed to buy. But the defendant told him that the sale would have to take place not there but in the defendant's apartment, which was nearby. The defendant drove from the parking lot, and the agent followed him to the apartment house and saw him enter an attic apartment by an exterior staircase and stand at the window holding the bag. Together with 12 to 15 other undercover agents, the agent entered the apartment house and forced open the door of the defendant's tiny apartment (400 square feet). When the defendant refused to obey their order to get down on the floor, they forced him down and handcuffed his hands behind his back. During the scuffle he reached for a gun in his waistband, but the agents seized it.

With the defendant handcuffed and face down on the floor, the agents did a protective sweep of the apartment to make sure that no one else was in it and that there were no weapons that the defendant might grab for. One of the places searched was an "entertainment center" in the living room. It seems, though the record is unclear and the district judge made no finding, that by this time the defendant was on the floor in the kitchen; but the kitchen was close to the entertainment center.

In the entertainment center was a closed cabinet, which the agents opened. And in the cabinet was the blue travel bag that the defendant had exhibited to the agent in the parking lot. The agents unzipped the bag and inside found another bag, which they opened, discovering cocaine. By the time they unzipped the blue travel bag, the agents knew there was no one else in the apartment besides themselves and the defendant.

The defendant was arrested lawfully, even though the arrest took place in his home and the police did not have a warrant. They could not have gotten a warrant in time and were therefore justified in arresting the defendant without one ("exigent circumstances"). The sale of the cocaine was originally to have taken place in the restaurant's parking lot, and had that happened the agent would have had the bag of cocaine and no need for a warrant. Unexpectedly, the defendant at the last minute insisted that the sale take place in his apartment. The agent decided to arrest the defendant on the spot. The defendant had shown him the drugs, so there was probable cause to arrest him. The agent gave a signal to fellow officers to assist with the arrest, but something went awry and they did not appear, so the agent went to the defendant's building and when he arrived he was able to signal to the other officers. Before they arrived, the defendant entered the building and went into his apartment—at which point the sound of the sirens of the arriving police cars could be heard. With the defendant alerted to their arrival, the police were justified in entering the apartment immediately.

As an incident to a lawful arrest, the police can search not only the person they have arrested to make sure he doesn't have a weapon but also and for the same purpose they can search the area within his immediate control—the area within grabbing distance—in which a weapon might be concealed that he could attempt to use against the officers or in which there might be evidence of his crime that he could destroy. *Chimel v. California*, 395 U.S. 752, 763 (1969); *United States v. Thomas*, 512 F.3d 383, 387 (7th Cir. 2008). There is no doubt that the police were entitled to open the cabinet in the entertainment center.

The defendant had identified himself as a dangerous person by resisting arrest and reaching for a gun even though he knew the crowd of officers were indeed law enforcement officers and not rival gangsters. He had a gun in his waistband; he might have other guns in the apartment—perhaps in the "entertainment center." The apartment was tiny, which meant not only that there were few other places in which to hide another gun or other guns but also that the defendant was within a few steps of the entertainment center. Handcuffed, lying face down on the floor, and surrounded by police, he was unlikely to be able to make a successful lunge for the entertainment center. But the police did not know how strong he was, and he seemed desperate.

So they could open the cabinet in the entertainment center. In it was the telltale blue travel bag. They knew it contained cocaine. It might also have contained a gun. But while it is conceivable though unlikely that the defendant could have make a successful lunge for the entertainment center and opened the cabinet and grabbed something inside it, it is inconceivable that having opened the cabinet door he would have had time to unzip the travel bag without being wrestled to the floor once again by the more than dozen police, who having ascertained that there was no one else in the apartment would not have been distracted from the task of re-subduing him.

But if this is wrong, what is inconceivable squared is that he could have unzipped not only the blue travel bag but also the bag inside it. That was the bag containing the cocaine used in evidence against him. The agents did not need to unzip *that* bag in order to protect themselves or prevent the destruction of evidence, and there is authority that that is enough to condemn the search. *United States*

*v. Lyons,* 706 F.2d 321, 324-25, 330-31 (D.C. Cir. 1983); *United States v. Cueto,* 611 F.2d 1056, 1062 (5th Cir. 1980). Most cases, however, including our own *United States v. Fleming,* 677 F.2d 602, 607 (7th Cir. 1982), uphold the lawfulness of such searches. E.g., *United States v. Williams,* 483 F.3d 425, 430 (6th Cir. 2007); *United States v. Currence,* 446 F.3d 554, 557 (4th Cir. 2006); *United States v. Hudson,* 100 F.3d 1409, 1413-14, 1420 (9th Cir. 1996); *United States v. Turner,* 926 F.2d 883, 887-88 (9th Cir. 1991); see Myron Moskovitz, "A Rule in Search of a Reason: An Empirical Reexamination of *Chimel* and *Belton,*" 2002 *Wis. L. Rev.* 657, 682-85. *Hudson,* for example, a case factually similar to this one, upheld the search of a closed rifle case that had been next to the defendant in his bedroom when he was arrested, even though the search was conducted after he had been handcuffed and removed from the house.

These cases, going beyond *Chimel,* hold that if the search is limited to the area under the defendant's control at the time of his arrest, the fact that it is no longer under his control at the time of the search does not invalidate the search. E.g., *United States v. Currence, supra,* 446 F.3d at 557; *United States v. Hudson, supra,* 100 F.3d at 1419. Their rationale, as well explained in *United States v. Abdul-Saboor,* 85 F.3d 664, 669 (D.C. Cir. 1996), is that if the police could lawfully have searched the defendant's grabbing radius at the moment of arrest, he has no legitimate complaint if, the better to protect themselves from him, they first put him outside that radius.

Were this rationale wrong or inapplicable, the defendant would find himself up against the doctrine of inevitable discovery. *Nix v. Williams,* 467 U.S. 431 (1984); *United States v. Gravens,* 129 F.3d 974, 979-80 (7th Cir. 1997). It is true that cases such as *United States v. Virden,* 488 F.3d

1317, 1323 (11th Cir. 2007); *United States v. Conner*, 127 F.3d 663, 667-68 (8th Cir. 1997), and *United States v. Mejia*, 69 F.3d 309, 320 (9th Cir. 1995), say that the doctrine should be confined to the situation in which the police are gathering evidence with a view toward obtaining a search warrant and it is certain or nearly so that had one of them not jumped the gun and searched without a warrant the investigation would have culminated in a successful warrant application. And the agents never had plans to obtain a search warrant.

Against these cases it could be argued that the doctrine of inevitable discovery should apply in any case in which the police have probable cause to obtain a warrant; for if they would have obtained one had they asked, why should a defendant benefit from their failure to ask? But while that is mentioned as a possible rule in *United States v. Elder*, 466 F.3d 1090, 1091 (7th Cir. 2006), it is not endorsed there and no court has embraced it. The obvious objection is that if it were adopted the police might never bother to apply for a warrant, in order to avoid the risk that the application would be denied. *United States v. Johnson*, 22 F.3d 674, 683 (6th Cir. 1994); *United States v. $639,558 in U.S. Currency*, 955 F.2d 712, 710-21 (D.C. Cir. 1992); Robert M. Bloom, "Inevitable Discovery: An Exception Beyond the Fruits," 20 *Am. J. Crim. L.* 79, 96 (1992). But the opposite rule, which would allow the doctrine to be invoked only if the police were in the process of obtaining a warrant, would be equally untenable. It would confer a windfall, in violation of "the familiar rule of tort law," which has force in the criminal context as well (think of the doctrine of harmless error, Fed. R. Crim. P. 51(a)), "that a person can't complain about a violation of his rights if the same injury would have occurred even if they

had not been violated." *United States v. Johnson*, 380 F.3d 1013, 1014 (7th Cir. 2004); see also *United States v. Stefonek*, 179 F.3d 1030, 1035-36 (7th Cir. 1999).

An attractive middle ground is to require the government, if it wants to use the doctrine of inevitable discovery to excuse its failure to have obtained a search warrant, to prove that a warrant would certainly, and not merely probably, have been issued had it been applied for. This was the approach taken in *United States v. Buchanan*, 910 F.2d 1571, 1573 (7th Cir. 1990), and explained in *United States v. Elder*, *supra*, 466 F.3d at 1091: "when a warrant is *sure* to issue (if sought), the exclusionary 'remedy' is not a remedy, for no legitimate privacy interest has been invaded without good justification, but is instead a substantial punishment of the general public" (emphasis added). A requirement of sureness—of some approach to certainty—preserves the incentive of police to seek warrants where warrants are required without punishing harmless mistakes excessively. For we must bear in mind that the people who are punished when criminals escape justice are not the police; they are the people on whom criminals prey.

Judged by this intermediate test, inevitable discovery has been shown. The police unquestionably were lawfully in the apartment, and unquestionably entitled to open the cabinet in the entertainment center. And there in plain view was the blue travel bag that they knew contained cocaine. (Whether, though the bag itself did not reveal its contents, those contents could be thought in "plain view" because known with certainty, is an issue that has divided the circuits, e.g., compare *United States v. Gast*, 405 F.3d 797, 801-02 (9th Cir. 2005), with *United States v. Williams*, 41 F.3d 192, 197-98 (4th Cir. 1994), and on

which our court has not taken a position and need not do so in this case.) There isn't even the shadow of a doubt that had they applied for a warrant to search the bag, knowing what they knew, the warrant would have been issued. The case is remote from one in which the police, having probable cause to search a person's house, barge in and search without benefit of a warrant and defend their conduct by invoking inevitable discovery. If that defense prevailed, the requirement of obtaining a warrant to search a person's home would be out the window. The requirement of obtaining a warrant to search inside a container, when the container is known to contain contraband or other evidence of crime, is far from the core of the Fourth Amendment; as this case illustrates, there is a diminished risk of error or fabrication.

AFFIRMED.