In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-2888

DARRYL J. SUTTON,

*Petitioner-Appellee,*

*v.*

RANDY PFISTER, Warden, Stateville Correctional Center,

*Respondent-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 09 C 8035 — **Sharon Johnson Coleman**, *Judge.*

ARGUED MAY 26, 2016 — DECIDED AUGUST 24, 2016

Before WOOD, *Chief Judge*, and MANION and HAMILTON,
*Circuit Judges.*

WOOD, *Chief Judge*. Daryl Sutton is serving a sentence in an
Illinois prison for aggravated criminal sexual assault. He con-
tends, in this *habeas corpus* proceeding under 28 U.S.C. § 2254,
that the evidence connecting him with that crime was ob-
tained by the state through a conceded violation of the Fourth
Amendment in a different case—specifically, a court order un-
supported by probable cause, requiring him to furnish a

blood sample for DNA testing. The district court ruled that
the writ should issue, but we conclude that it erred in doing
so, because the blood (and thus the DNA) would inevitably
have been produced under a state law that provided legal au-
thority for collecting the sample. We therefore reverse.

**I**

Sutton has been convicted of violent crimes in multiple
separate prosecutions by the state of Illinois. Two of these con-
victions are relevant here: his 1991 conviction for attempted
aggravated criminal sexual assault against A. Rac (the Rac
prosecution), and his 1997 conviction for aggravated criminal
sexual assault against P. Lally (the Lally prosecution). The
facts relevant to this appeal (even if not the facts of those
crimes) are largely uncontested: the state concedes that it un-
lawfully collected a sample of Sutton's blood during the Rac
prosecution and then used that blood sample in the Lally
prosecution. Sutton's petition relates to the Lally conviction.

In March 1991, Rac was the victim of an attempted sexual
assault in the alleyway behind her apartment building. Sutton
was arrested and charged with the crime. On April 3, 1991,
Sutton appeared at a preliminary hearing before Cook
County Circuit Court Judge James F. Henry. Judge Henry
granted the prosecutor's request to order that Sutton submit
a blood sample as a condition of his bond, over Sutton's ob-
jection. But Sutton was not released on bond at that time, and
therefore the ordered sample was never taken.

On May 7, 1991, during a pre-trial hearing before a differ-
ent judge, Judge Richard LaCien, the prosecution noted that
the blood sample had not been taken and asked for an oppor-
tunity to "redraft" Judge Henry's order and have Judge

LaCien sign it. Judge LaCien permitted the prosecution to do so and signed the order over Sutton's objection. The order stated:

> It is hereby ordered pursuant to chpt 110A § 413 that the defendant submit a blood specimen and saliva sample as well as head and hair (pubic) samples. The defendant shall be taken to Cermak Hospital as soon as is practicable pursuant to this order.

The statute to which he referred, Ill. Rev. Stat., ch. 110A ¶ 413(a)(vii) (1991), allows a court to order a blood or other tissue sample "subject to constitutional limitations." This order, unlike the previous one, was not conditioned on Sutton's release on bond. Three months later, the state took Sutton's blood sample pursuant to the order and sent it to the state police lab and the FBI lab.

At a jury trial in November 1991, Sutton was convicted on all counts and sentenced to ten years in prison. The prosecution presented no forensic evidence. Although an Illinois statute in effect at the time specified that any persons convicted of sex offenses "shall … be required to submit samples of blood and saliva," the court did not order Sutton to provide another sample. Ill. Rev. Stat. ch. 38, ¶ 1005-4-3(A) (1991).

On to the Lally proceedings. In 1990, Lally was the victim of a home invasion and sexual assault. The assault took place during the intruder's break-in into the home of another person, who ultimately testified as a witness. Both the witness and Lally were present in the home. The intruder tied up the witness, sexually assaulted Lally, and stole money from both of them. Following the attack, Lally permitted medical personnel to assemble a rape kit. At that time, Sutton was not a

suspect, and neither Lally nor the other witness was able definitively to identify any suspect from the police photos or lineup. The other witness initially identified someone else as the assailant based on a photo display, but could not identify that person in a subsequent lineup.

After the Rac prosecution, there was a break in the Lally case: the FBI lab matched Sutton's DNA (derived from the Rac blood sample) with physical evidence supplied by Lally. The witness was able to identify Sutton as the attacker, although Lally could not. Based on this new evidence, Sutton was charged for the attack.

Before trial, Sutton moved to suppress the DNA evidence connecting him to the Lally crime on the ground that the blood sample had been taken in violation of the Fourth Amendment. At an evidentiary hearing, Sutton presented the transcript of the proceeding before Judge LaCien. Sutton also questioned John Haskins, the prosecutor responsible for post-conviction proceedings in the Rac case. Haskins testified that Sutton's blood had "no evidentiary value" in the Rac case, because that case did not include any "testimony about … blood[,] … semen or any fluid," nor was any DNA testing done. Although a sweatshirt with bloodstains was collected at the scene, it was not used in the Rac case nor was any evidence related to the sweatshirt presented to Judge LaCien before he signed the order. The Lally judge responded, "I don't know what evidence the State and defense had at the time they requested that order for the blood drawing," but "I would assume that either good reasons were given to Judge LaCien for signing that order or no objection was made at the time."

The court ignored the Rac transcript, which showed exactly which reasons were given to Judge LaCien before he signed the order. It admitted the DNA evidence, and Sutton was convicted of all counts in the Lally case. He was sentenced to concurrent 18-year sentences for home invasion and armed robbery, and a consecutive 15-year sentence for aggravated criminal sexual assault.

Sutton's appeals from that judgment were unsuccessful. The Illinois Court of Appeals rejected his argument that the blood sample was inadmissible. The Court of Appeals stated, erroneously, that Sutton failed to provide it with a transcript, and therefore it "presume[d] that Judge LaCien acted correctly in ordering defendant to permit the taking of his blood and hair and that probable cause justified the order." In fact, Sutton did provide a transcript, as the state now concedes. The court ruled in the alternative that Haskins's testimony supported probable cause because of the bloody sweatshirt. The Illinois Supreme Court denied leave to appeal.

Sutton did not fare any better during state post-conviction review. He argued that his appellate counsel was ineffective because he failed to provide the transcript of the hearing before Judge LaCien to the Court of Appeals. The trial court denied his petition. The Court of Appeals acknowledged that it had been mistaken on direct review—Sutton did, in fact, provide the transcript—but nonetheless affirmed its prior alternate holding, stating that the "manifest weight of the evidence indicated that the order was based on a finding of probable cause." (The Court of Appeals granted limited relief on other grounds not relevant here). The Illinois Supreme Court again denied leave to appeal.

Sutton then filed his petition seeking *habeas corpus* relief under 28 U.S.C. § 2254. He alleged that he received ineffective assistance of appellate counsel in violation of his Sixth Amendment rights, because his counsel did not include or properly cite to the transcript during direct review. Rather than focusing on the Sixth Amendment argument, however, the district court, citing a 1994 district court case, decided that it could "consider a properly preserved constitutional claim underlying a habeas petitioner's claim of ineffective assistance of counsel." It thus turned directly to Sutton's underlying Fourth Amendment claim. It held that although a federal court cannot generally grant *habeas corpus* relief on the basis of a Fourth Amendment claim under *Stone v. Powell*, 428 U.S. 465 (1976), Sutton's situation falls within the narrow exception for cases where the petitioner did not have a full and fair hearing on his Fourth Amendment claim in state court. On the merits, it found a constitutional violation warranting the issuance of the writ. Because Sutton is currently serving a life sentence for an unrelated conviction, it stayed the writ until Sutton is no longer in custody under any other sentence.

The district court then denied the state's motion to alter or amend the judgment. In that motion, the state argued that it would inevitably have discovered Sutton's DNA because of the state law requiring that persons convicted of certain sexual crimes provide a blood sample. The Fourth Amendment exclusionary rule, it said, thus did not bar admission of the DNA evidence in the Lally case anyway. The district court rejected that argument, and the state appeals.

## II

### A

Because the district court specified that it was not issuing the writ immediately, we must first confirm that appellate jurisdiction exists. (The district court had jurisdiction under 28 U.S.C. §§ 1331, 2241, and 2254.) The district court's order disposed of all claims; all that remains to be done is the execution of the judgment—issuing the writ after Sutton's release. That is the type of loose end that does not destroy finality for purposes of appeal. See *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 199 (1988). And in this case, because it is the state that brings the appeal, no certificate of appealability is required. FED. R. APP. P. 22(b)(3). Our jurisdiction is therefore secure. See 28 U.S.C. §§ 1291 and 2253.

### B

Before turning to the merits, we must say a word about the district court's decision to reach through Sutton's Sixth Amendment ineffective-assistance-of-counsel claim to address the merits of the underlying Fourth Amendment claim. See generally *Kimmelman v. Morrison*, 477 U.S. 365 (1986) (discussing the relation between a Fourth Amendment claim and a Sixth Amendment ineffective-assistance-of-counsel claim based on counsel's litigation of the underlying Fourth Amendment claim). In its filings in the district court, the state failed to present the argument that Sutton's Fourth Amendment claim was not properly before the district court. But see *Powell*, 428 U.S. 465. (The state has briefed *Powell* in this court. We consider it to the extent we find necessary, but the state lost the chance to try to nip this case in the bud on that basis.)

We therefore proceed on the assumption that Sutton's Fourth Amendment claim was properly before the district court.

C

This brings us to the main event: Sutton's Fourth Amendment claim. The first question is whether any relief is available to him, in light of the strictures in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). AEDPA authorizes collateral relief only when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where a state court has decided an issue on the merits, we may grant relief only if that decision was "contrary to, or involved an unreasonable application of clearly established Federal law" as determined by the Supreme Court. *Id*. § 2254(d)(1). For alleged Fourth Amendment violations, enforceable through the exclusionary rule, this already-high bar gets raised even further: relief is not available except in extremely narrow circumstances. See *Powell*, 428 U.S. 465.

In *Powell*, the Supreme Court held that a federal court generally cannot grant *habeas corpus* relief based on a state court's failure to suppress evidence collected in violation of the Fourth Amendment. *Id*. at 482. This is because the exclusionary rule is a "means of effectuating the rights secured by the Fourth Amendment" by deterring police misconduct, rather than a personal constitutional right of the defendant. See *id*. at 482, 486; see also *Reed v. Farley*, 512 U.S. 339, 347–48 (1994) (plurality opinion). In the case of collateral proceedings, that deterrent effect is so weak that it is outweighed by the harm of excluding probative evidence. See *Powell*, 428 U.S. at 486–88, 493.

The Court recognized one narrow exception to the *Powell* rule: a petitioner may litigate his Fourth Amendment exclusionary rule claim on collateral review if he was not "afforded the opportunity for full and fair consideration of his search-and-seizure claim at trial and on direct review." *Id*. at 486. The district court relied on this exception, noting that (1) the state trial court in the Lally case "assume[d]" that there was probable cause for the Rac court to issue a warrant without considering any evidence; (2) on direct review, the Illinois Court of Appeals failed to recognize that Sutton provided the necessary transcript; and (3) although on post-conviction review the Illinois Court of Appeals recognized its error in not noticing the transcript on direct review, it nevertheless found that probable cause supported the Rac court's order, even though there was no evidence supporting this conclusion and ample evidence to the contrary.

We find it unnecessary to decide whether the facts identified by the district court suffice to bring Sutton's case into the *Powell* exception. The writ cannot issue if there was no Fourth Amendment violation to begin with. The state courts found that there was no such violation, and so we examine that finding under AEDPA's deferential rule.

D

The state argues that the admission of Sutton's DNA evidence in the Lally trial did not violate the exclusionary rule because it would inevitably have discovered that evidence regardless of the unconstitutional search. Under the inevitable discovery doctrine, "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means … then the deterrence rationale [of the exclusionary

rule] has so little basis that the evidence should be received." *Nix v. Williams*, 467 U.S. 431, 444 (1984). The state must show "both (1) that it had, or would have obtained, an independent, legal justification for conducting a search that would have led to the discovery of the evidence and (2) that it would have conducted a lawful search absent the challenged conduct." *United States v. Howard*, 729 F.3d 655, 663 (7th Cir. 2013) (internal quotation marks omitted). "[I]nevitable discovery involves no speculative elements but focuses on the demonstrated historical facts capable of ready verification or impeachment." *Nix*, 467 U.S. at 444.

This issue is properly before us, despite the fact that the state first raised inevitable discovery in its motion to alter or amend the judgment in the district court. See FED. R. CIV. P. 59(e). Ordinarily this would be too late in the day, but here the district court actually considered the argument in its ruling on the Rule 59(e) motion; as a result, we can consider it on appeal. We review that ruling for abuse of discretion. *Burritt v. Ditlefsen*, 807 F.3d 239, 252 (7th Cir. 2015). A "district court by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996).

The district court was skeptical that the inevitable discovery doctrine could apply to an order to draw blood. While it is true that the doctrine more typically is applied in situations in which the police prematurely conduct a search before obtaining a warrant or before the search would become justified by an exception to the warrant requirement, we see no reason, and indeed AEDPA would not permit us on collateral review, to create a new distinction between physically entering a location and drawing blood. See, *e.g.*, *Howard*, 729 F.3d at 663 (applying doctrine when evidence found in an unlawful

search would have been discovered minutes later in a lawful search incident to arrest); *United States v. Tejada*, 524 F.3d 809, 813 (7th Cir. 2008) (applying doctrine where a search of an apartment incident to a lawful arrest revealed a travel bag that the officers unlawfully searched, but "certainly" would have been given a warrant to search had they applied for one). The concept of a search applies equally to both. See *Missouri v. McNeely*, 133 S. Ct. 1552, 1556 (2013) (confirming that taking a blood sample is a search).

*Nix v. Williams*, which was the first Supreme Court decision to provide an extensive analysis of the inevitable discovery doctrine, supports this conclusion, and it is telling that it also did not involve a straightforward search of a building or place. There, the police questioned a homicide suspect in violation of his Sixth Amendment rights, leading the suspect to reveal the location of the victim's body. *Nix*, 467 U.S. at 434–36. The Court denied *habeas corpus* relief because, although the evidence was obtained illegally, the police already had begun a search in the correct area and would have discovered the body regardless of the suspect's statements. *Id.* at 448–49. The Court explained that the purpose of the Fourth Amendment exclusionary rule is to ensure that the state is not put in a *better* position by virtue of its unlawful conduct; correspondingly, the purpose of the inevitable discovery rule is to ensure that the state is not put in a *worse* position than if the unlawful conduct never took place. *Id*. at 443–44. "[B]ecause the police would have obtained that evidence if no misconduct had taken place," excluding it would not serve the purpose of the exclusionary rule. *Id*. at 444. This reasoning applies just as readily to a blood test as it does to prematurely entering a house or discovering evidence revealed during an unlawful interrogation.

Since there is no categorical reason why the inevitable discovery doctrine cannot apply to the Lally prosecution, we must determine whether the state has shown by a preponderance of the evidence that it would have obtained Sutton's blood sample lawfully in the absence of the unlawful order from the Rac case. See *id*. In order to meet this burden, the state points to an Illinois law in effect at the time that *required* all persons convicted of certain sexual crimes (including those of which Sutton was accused) to provide a blood sample. The relevant statute, Ill. Rev. Stat. ch. 38, ¶ 1005-4-3(A) (1991), stated that persons convicted of certain sexual offenses "shall … be required to submit blood samples and saliva to the Illinois State Police." (The current version is codified at 730 ILCS 5/5-4-3 (2014)). The language in the statute is mandatory, although it obviously was not followed to the letter in the Rac case. The state, which has the burden of demonstrating that the doctrine applies, has not explained why a new sample was not collected after Sutton's conviction: because the state already had one, or some other reason.

There is a presumption that the police and the courts will follow their routine procedures for issuing warrants. See, *e.g.*, *United States v. Marrocco*, 578 F.3d 627, 639 (7th Cir. 2009) (presuming that police "undoubtedly would have followed routine, established steps resulting in the issuance of a warrant"); *United States v. Buchanan*, 910 F.2d 1571, 1573 (7th Cir. 1990) (similar). Principles of comity advise us to give the state court system this same presumption of regularity. The law on the books required the court to order Sutton to provide a blood sample. This is enough, in our view, to show by a preponderance of the evidence that, but for the fact the state already had a sample from Sutton, it would have collected a sample. (Why

engage in a pointless act?) The timing of the collection of Sutton's blood thus drops out of the case, and the DNA harvested from the sample would inevitably have been discovered after his conviction in the Rac case. The trial court in the Lally case therefore could have admitted that DNA evidence pursuant to the inevitable discovery doctrine, despite the assumed Fourth Amendment violation in the Rac case. (This is not the ground on which the state court relied, but we are not here to grade its opinions, if its ultimate result was reasonable.)

Thus, even if Sutton falls within the *Powell* exception, he is not entitled to *habeas corpus* relief. Section 2254(a) permits a federal court to grant the writ only when the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); see *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (legal errors that do not result in the petitioner's "custody" violating the Constitution or federal law, such as errors of state law, cannot be remedied through the writ); *Hampton v. Wyant*, 296 F.3d 560, 562 (7th Cir. 2002) (petitioner imprisoned based on "unlawfully seized evidence is not 'in custody in violation the Constitution'" because the "*seizure* may have violated the Constitution but the *custody* does not" (quoting 28 U.S.C. § 2254(a)). Here, even if the state violated the Fourth Amendment in the Rac case, Sutton's custody in the Lally case is not in violation of the Constitution, and he is not entitled to the issuance of the writ.

### III

We have proceeded on the assumption, uncontested for present purposes, that the Illinois trial court's May 1991 order authorizing the state to take Sutton's blood sample was unlawful because at the time it was not supported by probable

cause. Nevertheless, the Lally court was entitled to admit the DNA evidence from that blood sample under the inevitable discovery doctrine. We do not reach the question whether it was proper for the district court to reach through Sutton's Sixth Amendment ineffective-assistance-of-counsel claim to hear the underlying Fourth Amendment claim, nor do we decide whether this case fits within the *Powell* exception permitting a federal court to grant *habeas corpus* relief where the petitioner did not have a full and fair opportunity to litigate his Fourth Amendment claim on direct review. It is enough to hold that even if *Powell* permits us to reach that issue, Sutton's "custody" in the Lally case is not in violation of the "Constitution … of the United States" and his petition thus should have been denied. We therefore REVERSE the district court's order granting Sutton's petition for a writ of *habeas corpus*.