In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-4254

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

VINCENT JONES,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:15-cr-00048-JD-MGG-1 — **Jon E. DeGuilio**, *Judge.*

ARGUED MAY 16, 2017 — DECIDED JUNE 28, 2017

Before BAUER, FLAUM, and KANNE, *Circuit Judges.*

BAUER, *Circuit Judge.* Defendant-appellant Vincent Jones
was convicted on one count of possession of a firearm by a
felon, 18 U.S.C. § 922(g)(1). On appeal, Jones challenges the
denials of his motions to suppress the guns found in his home.
We affirm.

## I. BACKGROUND

Jones lived with his girlfriend, Jennifer Kelley, and her three children in a mobile home located in Westville, Indiana. On June 5, 2013, Kelley's daughter ("MK") went to a neighbor's residence to call the police to report that Jones sexually assaulted her. Officers James Gunning and Jason Yagelski of the Westville Police Department were dispatched to the scene. There, both officers encountered Kelley and MK. Kelley told the officers that she was afraid of Jones; the officers transported Kelley and MK to the police department for further inquiry.

At the police department, MK told the officers that she had been sexually assaulted by Jones for several years. Kelley told the officers that Jones was a convicted felon who had tendencies of being violent and aggressive, that he had guns in a safe in their shared bedroom, and that she feared for her life and the lives of her children. The officers ran a criminal history check, which confirmed that Jones was a convicted felon.

The Kelleys and the officers returned to the residence with three additional officers: James Jackson, Brian Piergalski, and Corey Chavez. The officers were greeted by Jones, who opened the door. Officer Gunning observed knives on a counter and told Jones that he needed to vacate the premises, but allowed him to retrieve his personal belongings. Jones followed the officers' instructions to step outside of the home. An officer immediately handcuffed Jones and escorted him to a picnic table located ten to twenty feet from the entrance of the residence. Two officers remained with Jones.

With Jones being detained, the officers presented Kelley with a consent to search form. She signed the form and agreed

to a warrantless search of her "residence and all rooms including enclosed boxes, safes etc. to clear the home of possible weapons and/or drugs."

Officer Piergalski searched Kelley and Jones' shared bedroom. In the bedroom, he saw two gun safes (a smaller safe on top of a larger one), boxes of ammunition, and empty gun holsters. He viewed several guns in the smaller safe, which was partially open. He opened the safe's door further to better see the guns. Officer Jackson observed that the smaller safe's door was open a couple of inches.

After seeing the contents of the open safe and in consultation with a state prosecutor, the officers ceased the search and sought a search warrant. The LaPorte County Superior Court issued a search warrant to search the home and the contents of the safe for evidence of sexual assault and firearms.

The officers conducted a full search of the home and seized twelve firearms, over a thousand rounds of ammunition, seventeen clips, and several firearm scopes. Jones was arrested and charged with one count of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1).

Jones moved to suppress the products of the search; the district court referred the case to a magistrate judge. At the hearing, Jones argued that Kelley's consent to search was invalid against him because the officers did not ask him for consent, and he did not consent, citing *Georgia v. Randolph*, 547 U.S. 103 (2006). Jones contended that the first search was illegal and the search pursuant to the warrant was tainted by the warrantless search. The magistrate judge rejected these arguments, concluding that *Randolph* was not applicable

because Jones failed to object to the search when it occurred. The magistrate judge also found that because the initial search was conducted with Kelley's consent and the guns were observed in plain view, there was nothing to taint the subsequent search warrant. The magistrate judge recommended that the motion be denied.

The district court adopted the magistrate judge's report and denied the motion. In denying the motion, the court rejected two newly asserted claims raised in the objections to the magistrate judge's report. Relying upon *Randolph*, Jones argued that the officers removed him for the purpose of preventing him from objecting to the search, and thus Kelley's consent was invalid as to him. The court found that Jones did not object to the search and that the officers did not unlawfully detain or remove him. Instead, the court found that he voluntarily exited the residence. Second, Jones again challenged the search of the gun safe, arguing that the safes were closed and thus the guns were not observed in plain view. As support, Jones relied upon Officer Piergalski's post-search report, which indicated that he pulled open the door in order to see the guns. The court rejected this argument, crediting the officers' testimony that the safe was open and concluding that the guns were observed in plain view. Lastly, the court alternatively concluded that either the inevitable discovery rule or independent source doctrine would prevent exclusion.

After the denial of his first suppression motion, Jones moved to reconsider; the court granted Jones' motion to reopen the evidentiary hearing to allow him to testify. Jones testified that he objected to the search, and therefore Kelley's consent was invalid as to him. According to Jones, two officers

stepped inside of the residence as he retrieved his keys and wallet. He testified that he told the officers that he did not "need any help finding my keys or wallet, and I didn't invite you in." Jones also testified that he noticed one officer "poking around through boxes and whatnot," and he asked the officer, "Don't you need a warrant?"

On June 21, 2016, the district court denied the motion to reconsider, finding that Jones' testimony was not credible and concluding that Jones' purported statements to the officers would not amount to an express refusal of consent as required under *Randolph*. Additionally, the court found that, even if Jones was correct that the officers unlawfully opened the safe prior to securing the search warrant, the evidence would have been admitted under either the inevitable discovery or independent source exceptions to the exclusionary rule.

Jones filed another motion to reconsider, which the district court denied on August 1, 2016. The court rejected both Jones' new and previously raised arguments. The court found that, after Jones voluntarily exited the residence and was subsequently handcuffed by the officers, his detention was lawful, both for the officers' safety and because the officers had probable cause to arrest him. The court declined to reconsider its alternative holding that the inevitable discovery doctrine applied.

At trial, Officer Piergalski made inconsistent statements as to whether the gun safe's door was initially open. After that testimony, Jones orally renewed his motion to suppress; the district court denied the motion. Ultimately, a jury convicted Jones on one count of possession of a firearm by a felon. The

court entered its final judgment on December 19, 2016. The court sentenced Jones to 97 months' imprisonment to run concurrently with the sentence he received for his state child molestation conviction. This appeal followed.

## II. DISCUSSION

Jones argues the district court erred in denying his motions to suppress the guns found in his home. First, he contends that the district court erred in considering various issues arising under *Randolph*. Second, he argues that the district court was wrong concluding that the guns would have been inevitably discovered.

When reviewing a district court's denial of a motion to suppress, we review legal questions *de novo* and factual findings for clear error. *United States v. James*, 571 F.3d 707, 713 (7th Cir. 2009). We "may affirm the judgment of the district court on any ground supported in the record." *United States v. Reaves*, 796 F.3d 738, 741–42 (7th Cir. 2015).

### A. *Randolph* Issues

The Fourth Amendment prohibits unreasonable searches and seizures and provides that a warrant may not be issued without probable cause. U.S. Const. amend. IV. A warrantless search conducted inside a person's home is presumptively unreasonable and a violation of the Fourth Amendment unless an established exception applies. *United States v. Henderson*, 536 F.3d 776, 779 (7th Cir. 2008) (citation omitted). One established exception is a search of a home that is conducted pursuant to an occupant's voluntary consent. *Fernandez v. California*, 134 S. Ct. 1126, 1132 (2014).

With the exception of Jones' gun safes, there is no dispute that Kelley had the authority to consent to the search of the home. In *Randolph*, however, the Supreme Court carved out a narrow exception to the consent exception, holding that "a physically present inhabitant's express refusal of consent to a police search [of his home] is dispositive as to him, regardless of the consent of a fellow occupant." *Randolph*, 547 U.S. at 122–23. In dicta, the Court also noted that consent by a resident might not be sufficient if there is "evidence that the police have removed the potentially objecting tenant from the entrance [of their home] for the sake of avoiding a possible objection … ." *Id.* at 121. Justice Breyer's concurrence defined the outer limits of the majority opinion, determining that the holding "does not apply where the objector is not present 'and object[ing].'" *Id.* at 126 (Breyer, J. concurring); *see Henderson*, 536 F.3d at 781.

The Supreme Court refined *Randolph* in *Fernandez*, emphasizing that *Randolph*'s "holding was limited to situations in which the objecting occupant is present." *Fernandez*, 134 S. Ct. at 1133. The Court held "that an occupant who is absent due to a *lawful detention or arrest* stands in the same shoes as an occupant who is absent for any other reason." *Id.* at 1134 (emphasis added). As to the *Randolph* dictum, the Court noted that it "refer[s] to situations in which the removal of the potential objector is not objectively reasonable." *Id.*

Jones argues that the warrantless search was unconstitutional because the officers removed him for the sake of avoiding a possible objection. Underlying this argument is the dispute of whether Jones was "removed" by the officers as contemplated by *Randolph*. Jones argues that he was removed

because, after he voluntarily exited the home, he was removed twenty feet from the entrance to a picnic table on the adjacent property. In response, the government contends that he was not removed because he was only twenty feet away from the entrance of the residence and could see and hear what the searching officers were doing. For our purposes here, we will assume without deciding that Jones was in fact removed, and then the issue becomes whether the removal was objectively reasonable. *See Fernandez*, 134 S. Ct. at 1134. Jones contends that his removal was not objectively reasonable because, unlike the defendant in *Fernandez*, he was neither under arrest nor read his *Miranda* rights. Rather, Jones argues that the evidence shows he was detained away from the search on an adjacent property under the guise of "officers' safety."

We disagree. Prior to the officers conducting the search, Kelley told them that Jones was a convicted felon who had several guns and tendencies of violence and aggression. She also told them that she feared for her life and the lives of her children, one of whom had just reported to those same officers that Jones sexually assaulted her. The officers ran a criminal history check and confirmed Jones' status as a convicted felon. Upon arriving at the scene, Officer Gunning observed knives on a counter near where he initially encountered Jones, who then voluntarily exited the residence. Under these circumstances, it was objectively reasonable for the officers to remove him not only for officers' safety, but also because they had probable cause to arrest him.

Moreover, Jones' attempt to distinguish *Fernandez* is unavailing. The *Fernandez* Court held that the *Randolph* exception does not apply where the defendant's absence from

the consent colloquy is the result of "lawful detention or arrest." *Fernandez*, 134 S. Ct. at 1134. This means that either a lawful detention or arrest may be an objectively reasonable basis for an officer to remove a cotenant. *See id.* at 1133–34. Even though Jones was neither under arrest nor read his *Miranda* rights, his removal was objectively reasonable as a lawful detention. *See id.*

Lastly, we note that Jones contends that the district court erred in discrediting his testimony that he objected to the search, and alternatively finding that those alleged objections did not amount to an unequivocal refusal to search under *Randolph*. *See* 547 U.S. at 122–23. The outcome of these issues would have no effect—even if Jones expressly refused consent to search—he was no longer "standing at the door and expressly refusing consent" when the officers received Kelley's consent to search the residence. *See id.* at 119; *Fernandez*, 134 S. Ct. at 1133. Instead, Jones was removed due to a lawful detention, and he therefore falls outside the scope of the *Randolph* exception. *See Fernandez*, 134 S. Ct. at 1133. As a result, Jones' objection would have "lost its force." *See Henderson*, 536 F.3d at 785. We conclude that Jones' removal was objectively reasonable, and thus Kelley's consent was effective to permit the warrantless search of the home.

## B. Inevitable Discovery

Next, we come to the issue of whether the officers' search of the gun safe was in violation of the Fourth Amendment. Even though Kelley had the authority to consent to the officers' search of the home, the parties do not dispute that she lacked the necessary authority to consent to the search of Jones' gun

safes. The district court concluded that, even if the officers did not observe the guns in plain view, the evidence would have been admitted under the inevitable discovery exception to the exclusionary rule.[1]

The doctrine of inevitable discovery provides that illegally obtained evidence will not be excluded if the government can prove, by a preponderance of the evidence, that the officers "ultimately or inevitably" would have discovered the challenged evidence by lawful means. *Nix v. Williams*, 467 U.S. 431, 444 (1984). To meet this burden, "the government must show (1) that it had, or would have obtained, an independent, legal justification for conducting a search that would have led to the discovery of the evidence; and (2) that it would have conducted a lawful search absent the challenged conduct." *United States v. Pelletier*, 700 F.3d 1109, 1116 (7th Cir. 2012) (quoting *United States v. Marrocco*, 578 F.3d 627, 637–38 (7th Cir. 2009)) (quotation marks omitted). The government has satisfied both requirements.

As to the first requirement, the government here had legal justification for a warrant. Even prior to the entry of the home, Kelley informed the officers that Jones had guns in a gun safe located in their shared bedroom. She informed the officers that Jones was a convicted felon, which was confirmed by the officers after they ran a criminal history check. Moreover, Kelley's statements to the officers were corroborated by Officer Piergalski's observation of two gun safes, boxes of ammuni-

---

[1]  We will assume without deciding that the guns safes were closed, and thus the officers could not observe the guns in plain view.

tion, and empty gun holsters, when he legally entered the shared bedroom. Additionally, we note that Jones' counsel twice conceded that the officers had probable cause for a search warrant even prior to entering the home.

The government also satisfied the second requirement, showing that they would have conducted a lawful search absent the challenged conduct. Not only did the officers have sufficient information that Jones was a convicted felon in possession of guns prior to entering the home, but, again, Officer Piergalski saw the two gun safes, boxes of ammunition, and empty gun holsters upon legally entering the shared bedroom. We are confident that the guns would have inevitably been discovered by lawful means. *See United States v. Goins*, 437 F.3d 644, 650 (7th Cir. 2006); *see also United States v. Tejada*, 524 F.3d 809, 814 (7th Cir. 2008) (noting that the "requirement of obtaining a warrant to search inside a container, when the container is known to contain contraband or other evidence of crime, is far from the core of the Fourth Amendment").

Jones also argues that the guns would not have been inevitably discovered because Kelley had considered evicting him. Jones claims that he would have taken the guns with him before the execution of the warrant. There is no evidence that Kelley had been considering evicting him prior to the day of the search. We have considered Jones' remaining arguments, but none merit discussion.

### III.  CONCLUSION

The district court's judgment is AFFIRMED.