In the

# United States Court of Appeals

## For the Seventh Circuit

No. 22-2696

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ARNEZ J. SALAZAR,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 22-cr-10005 — **Michael M. Mihm**, *Judge.*

ARGUED APRIL 25, 2023 — DECIDED JUNE 2, 2023

Before RIPPLE, ST. EVE, and PRYOR, *Circuit Judges.*

ST. EVE, *Circuit Judge.* When police officers arrested Arnez Salazar, they searched his nearby jacket and found a gun. In the subsequent prosecution for possessing a firearm illegally, 18 U.S.C. § 922(g), Salazar unsuccessfully moved to suppress the gun. The district court ruled that the police had conducted a valid search incident to arrest because Salazar could reach the jacket (and gun) and, in any event, he had abandoned the jacket. Salazar pleaded guilty but reserved the right to appeal

the denial of his motion to suppress. On appeal, he argues that the district court erred by finding that he could reach the gun and had abandoned the jacket. We conclude that the search was a lawful search incident to Salazar's arrest and therefore affirm.

## I.

### A.

On January 14, 2022, Salazar was at a bar in Peoria, Illinois. He posted a video of himself online, which Peoria police officers saw. Knowing Salazar had an active arrest warrant for traffic violations, five officers went to the bar to arrest him. The bar's security cameras and the officers' body-worn cameras captured the events that ensued.

When the officers arrived, Salazar was sitting at the bar with a beer in front of him and a black jacket on the back of his chair. Draped over the back of an empty chair to his left was another jacket with a Purple Heart insignia on its back. The officers approached Salazar and told him that they had a warrant for his arrest. Salazar loudly asked why he was being arrested and who called the police. As he stood between the two chairs, an officer cuffed his hands behind his back.

The officers conducted the search after cuffing Salazar. A second officer asked him if he had anything on him, and Salazar said no. That officer reached into Salazar's pants pockets and found some cash and a piece of paper, which the officer immediately returned. A third officer picked up the Purple Heart jacket from the adjacent chair and searched it. A fourth officer reached into the right pocket of the black jacket hanging on Salazar's chair. Salazar asked why the officers were checking both coats, and the officer who had searched the

Purple Heart jacket asked Salazar if that jacket was his. Salazar said yes. The officer who searched Salazar's pants pockets asked four times if the black jacket was also his, and Salazar said no each time. During this time, Salazar remained standing between the two chairs, with his back to the chair he had been sitting on and his hands cuffed behind his back. The officers stood in a semicircle around Salazar; no officer stood between him and the chair with the black jacket on it.

Meanwhile, the police found a gun in the black jacket on Salazar's chair. An officer lifted the jacket off the chair, felt a firearm in its left side, and said, "There's a gun in here." Salazar continued denying that the black jacket was his. The officers found a wallet containing Salazar's identification in the outside left jacket pocket and a gun in the inside left pocket, which was not zipped or otherwise secured. One of the officers carried the jacket outside to secure the gun, while other officers led Salazar away. The arrest and search occurred over the course of about three minutes.

**B.**

The government charged Salazar with possessing a firearm illegally, 18 U.S.C. § 922(g), and he moved to suppress the gun, arguing that the warrantless search of the jacket violated his Fourth Amendment rights. First, Salazar argued that the officers had already secured him when they searched the jacket, so the search was not a valid search incident to arrest. Second, he contended that he maintained a protected privacy interest in the jacket because the government could not rely on his statement that he did not own the jacket—and thus had disclaimed any privacy interest in it—when the denial came after an officer illegally searched the jacket's right pocket.

The district court held a hearing at which the government introduced video and still images from the security cameras and body-worn cameras. The court described the question of whether the search was lawful as "extremely fact-intensive" and "very close," but it ruled that the gun was found during a lawful search incident to arrest. The court explained that despite being cuffed and surrounded by officers, Salazar was so close to his jacket and "agitated" that it would have been "possible," albeit "very difficult," for him to "have reached that gun." In the alternative, the court held that the search was valid because Salazar had abandoned the jacket (and any privacy interest in it) by denying that he owned the jacket before an officer searched its left pocket and found the gun. The court determined that the denial of ownership was not tainted by the earlier search of the jacket's right pocket, as officer safety justified the search.

Salazar pleaded guilty, reserving his right to appeal the denial of the motion to suppress. The court sentenced him to 28 months' imprisonment and a three-year term of supervised release.

**II.**

Salazar argues that the district court erred by ruling that the warrantless search of the jacket was a lawful search incident to arrest and that Salazar had abandoned the jacket. We review the district court's legal conclusions de novo and findings of fact for clear error. *United States v. Hammond*, 996 F.3d 374, 383 (7th Cir. 2021). We may rely on video evidence while reviewing the district court's factual findings. *See, e.g., United States v. Norville*, 43 F.4th 680, 682 (7th Cir. 2022).

**A.**

Warrantless searches are "*per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (citation omitted). At issue here is a search incident to a lawful arrest, an exception to the warrant requirement derived from the dual "interests in officer safety and evidence preservation." *Id.* at 337 (citation omitted); *see Chimel v. California*, 395 U.S. 752, 762–63 (1969).

Incident to arrest, officers may search the "area from within which [the arrestee] might gain possession of a weapon or destructible evidence." *Chimel*, 395 U.S. at 763. If an arrestee cannot possibly reach the area an officer wants to search, neither justification for this exception is present, and it does not apply. *Gant*, 556 U.S. at 339. In *Gant*, the defendant was arrested for driving with a suspended license, cuffed, and locked in a patrol car before officers searched his car without obtaining a warrant. *Id.* at 336. The Court observed that "Gant clearly was not within reaching distance of his car at the time of the search." *Id.* at 344. From this fact, *Gant* reasoned that for the police to lawfully search a car's interior after arresting its driver for a traffic violation, the arrestee must be "unsecured and within reaching distance" of the car's interior at the time of the search. *Id.* at 343.

Salazar seizes on the conjunction in that last quotation to argue that *Gant* created a two-part test for the validity of a search incident to arrest, without expressly saying that it was doing so. In Salazar's view, for a search incident to arrest to be lawful, the arrestee must be both "unsecured" *and* "within reaching distance" of the area to be searched. Under that test, Salazar reasons, the search of his jacket was unreasonable:

Because he was cuffed, he was not "unsecured" (part one), even if he was otherwise "within reaching distance" of the jacket (part two). Thus, reasonable officers would not think that they were in danger or that evidence could be destroyed, and they could not conduct a warrantless search.

In support of the proposition that *Gant* adopted a two-part test, Salazar cites *United States v. Davis*, 997 F.3d 191 (4th Cir. 2021), but that case does not help him. In *Davis*, the Fourth Circuit merely noted that it is an open question whether *Gant* describes a conjunctive two-part test or "a sliding scale with two dimensions for evaluating the reasonableness of the officer's belief that the arrestee could access [a] container so as to retrieve a weapon or destroy evidence." *Id.* at 198 n.6.

We do not read *Gant* to demand separate analyses of whether an arrestee is secured and whether an area is within reaching distance. A Fourth Amendment issue ordinarily calls for a fact-intensive case-by-case analysis, requiring a court to determine whether a search or seizure was objectively reasonable given the totality of the circumstances. *See, e.g., United States v. Yang*, 39 F.4th 893, 899 (7th Cir. 2022). In the context of analyzing reasonable suspicion, for example, the Supreme Court has explained: "The 'totality of the circumstances' requires courts to consider 'the whole picture.' Our precedents recognize that the whole is often greater than the sum of its parts—especially when the parts are viewed in isolation. … The totality-of-the-circumstances test 'precludes [a] divide-and-conquer analysis.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 588 (2018) (first quoting *United States v. Cortez*, 499 U.S. 411, 417 (1981); and then quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002)). Determining that a search is unreasonable based on whether a defendant is secured

without considering if he can reach the area to be searched would be the kind of divide-and-conquer analysis the Court has rejected.

We think the more faithful reading of *Gant* places that case within the normal Fourth Amendment analytical framework. Rather than articulating a new test, *Gant* stands for the principle that a search incident to arrest is reasonable if it is possible that an arrestee can access a weapon or destroy evidence in the area to be searched. *See* 556 U.S. at 343–44. To be sure, this analysis may require a court to determine whether an arrestee is "unsecured" and whether he is "within reaching distance" of the search area. *See id.* But these issues are not standalone elements of a two-part test—they are factors that bear on the totality of the circumstances, under which a search is reasonable or not.

**B.**

Here, the district court did not clearly err in concluding that Salazar could have gained access to the black jacket. Unlike the arrestee in *Davis*, who was cuffed and face down on the floor, which "severely curtail[ed] the distance he could reach" and disabled him from making trouble, 997 F.3d at 198, the video evidence confirms that Salazar remained standing, agitated, and adjacent to the jacket. Although five officers surrounded him, no officer stood between him and the jacket. Under those circumstances, and accounting for the fast-paced sequence of events, it was reasonable to think that the jacket posed a threat. Salazar, for example, could have lunged for the jacket, which might have contained (and did contain) a weapon.

Our decision in *United States v. Tejada*, 524 F.3d 809 (7th Cir. 2008), supports this outcome. There, we held "that the police were entitled to open [a] cabinet in [an] entertainment center," even though the arrestee was cuffed, face down on the floor, and surrounded by police. *Id.* at 811–12. Although the arrestee was "unlikely" to "lunge" successfully for the entertainment center, it was still possible because the police did not know his strength, and he seemed "desperate." *Id.* at 812. Concern for officer safety made the search of the entertainment center reasonable. By contrast, the separate search of a travel bag within the entertainment center was unreasonable because it was "inconceivable" that the arrestee could open the cabinet *and* the travel bag without being stopped by the officers. *Id.* The search of Salazar's jacket is like the search of the entertainment center: Although both arrestees were cuffed, surrounded by police, and unlikely to lunge at the search area, such a lunge was possible because both arrestees were unpredictable and adjacent to the area the officers searched. Further supporting the reasonableness of the search here, Salazar was upright, while the arrestee in *Tejada* was on the floor.

Salazar relies on *United States v. Leo*, 792 F.3d 742 (7th Cir. 2015), but that decision is distinguishable. There, officers stopped the defendant, cuffed his hands behind his back, and frisked him for weapons, finding none. *Id.* at 745. The officers then searched the defendant's backpack, which we held was unconstitutional. *Id.* at 745, 749–50. But *Leo* involved a *Terry* stop, which the Supreme Court has long recognized as distinct in "purpose, character, and extent" from searches incident to arrest. *See, e.g.*, *Terry v. Ohio*, 392 U.S. 1, 25–26 (1968). Indeed, the government never argued, and we did not

address, whether officers could have searched the backpack incident to arrest. *See Leo*, 792 F.3d at 748.

The district court did not clearly err in finding that there was a realistic probability that Salazar could reach the black jacket. Thus, the search was reasonable. The result would be the same under Salazar's proposed two-part test because he was both unsecured and within reaching distance of the jacket. Since the search of the jacket was valid as a search incident to a lawful arrest, we need not decide whether Salazar abandoned the jacket.

*     *     *

The search of Salazar's jacket that yielded the gun was a lawful search incident to arrest. Accordingly, the judgment of the district court is

AFFIRMED.